**ACME PRINTING INK COMPANY, a Delaware corporation, Plaintiff,**

**v.**

**MENARD, INC., a Wisconsin corporation; Ed's Masonry and Trucking, Inc., a Wisconsin corporation; Edward J. Fadrowski; Marcia Smith; Anthony Ivancich; Bel–Aire Enterprises; Concrete Contractors, Inc., a Wisconsin corporation; Brey Saw Shop, a partnership; Dan Brey; Max Brey; Cambridge Chemical, Inc., a Wisconsin corporation; Cardinal Fabricating Corp., a Wisconsin corporation; John A. Davis, Jr.; Commercial Heat Treating, Inc., a Wisconsin corporation; Herb Engel Realty Co., Inc., a Wisconsin corporation; Hartwig, Inc., a Wisconsin corporation, d/b/a Hartwig Exhibitions; Helmut's Building Service, Inc., a Wisconsin corporation; Kramer Brass Foundry, Inc., a Wisconsin corporation; Dennis J. Cortte, d/b/a Layton Motor Sales; Jerry Lesperance, d/b/a Lesperance Construction; Lincoln Savings Bank, S.A., f/k/a Lincoln Savings & Loan Association, a Wisconsin chartered**

savings and loan association; Vernin Tretow, d/b/a Loomis Center Garage; Lubricant, Inc., a Wisconsin corporation; Richard W. Drexler; Robert Howell; Miller Tilt–Top Trailer, Inc., a Wisconsin corporation; Lewis Miller; Robert Bera; Pemper Engineering Co., Inc., a Wisconsin corporation; Frank Povlick, Inc., a Wisconsin corporation; Charles E. Rickheim; Service Painting Corp., a Wisconsin corporation; Sun Control Corporation, a/k/a Milwaukee Venetian Blind Co., a Wisconsin corporation; Supreme Casting, Inc., a Wisconsin corporation; Texaco, Inc., a foreign corporation; Wauwatosa Savings & Loan, a loan association; Williams Petroleum, Inc., a Wisconsin corporation; Cigna Property and Casualty Companies, a Connecticut corporation; Ranger Insurance Company, a Delaware corporation; Hartford Accident & Indemnity Company, a Connecticut corporation; Employers Insurance of Wausau, a Wisconsin corporation; and Reliance Insurance Company, a Pennsylvania corporation, Defendants,

v.

TRAVELERS COMPANIES, INC., a Connecticut corporation and Home Insurance Co., Inc., a New Hampshire corporation, Third–Party Defendants.

CAMBRIDGE CHEMICAL, INC., a Wisconsin corporation, Third–Party Plaintiff,

v.

HARTFORD ACCIDENT & INDEMNITY CO., a Connecticut corporation, Third–Party Defendant.

No. 89–C–834.

United States District Court, E.D. Wisconsin.

June 29, 1995.

William S. Roush, Jr., Davis & Kuelthau, Milwaukee, WI, for Acme Printing Ink Co.

Robert W. Corey, Menard, Inc. Legal Dept., Eau Claire, WI, for Menard, Inc.

Edward R. Cameron, Milwaukee, WI, for Ed's Masonry and Trucking, Edward J. Fadrowski [deceased].

Anthony Ivancich, Milwaukee, WI, pro se.

Timothy J. Strattner, Schellinger & Doyle, Brookfield, WI, for Bel–Aire Enterprises and Concrete Contractors, Inc.

Bruce C. O'Neill, Fox, Carpenter, O'Neill & Shannon, Milwaukee, WI, for Cambridge Chemical, Inc.

Daniel M. Leep, McNally, Maloney & Peterson, Milwaukee, WI, for Cardinal Fabricating Corp. and Robert Howell.

William Wiseman, O'Neil, Cannon & Hollman, Milwaukee, WI, for Chromium, Inc.

James A. Baxter, Mitchell, Baxter, O'Meara & Mathie, Milwaukee, WI, for Kramer Brass Foundry, Inc.

William H. Harbeck, Quarles & Brady, Milwaukee, WI, for John A. Davis, Jr.

Steve Enich, Charles Johnson, Milwaukee, WI, for Commercial Heat Treating.

Herb Engel Realty Co., c/o Gerald L. Engel, Milwaukee, WI, for Herb Engel Realty Co.

Raymond J. Pollen, Crivello, Carlson, Mentkowski & Steeves, S.C., Milwaukee, WI, for Hartwig, Inc. d/b/a Hartwig Exhibitions.

Stuart B. Eiche, Jacqueline E. Frakes, Eiche & Frakes, Milwaukee, WI, for Helmut's Building Service.

John A. Fiorenza, John P. Hayes, Fiorenza & Hayes, Milwaukee, WI, for Williams Petroleum.

Michael P. Carlton, von Briesen & Purtell, Milwaukee, WI, for Dennis J. Cortte d/b/a Layton Motor Sales.

Michael W. Rohr, Krawczyk & Duginski, Milwaukee, WI, for Lincoln Savings Bank and Pemper Engineering Co.

Tom Duggan, John T. Lynch, Duggan, Lynch & Fons, Greenfield, WI, for Vernin Tretow d/b/a Loomis Center Garage.

Richard Drexler, c/o Lubricants, Inc., Milwaukee, WI, for Lubricants, Inc.

Thomas S. Sommers, Sommers & Sommers, Milwaukee, WI, for Richard W. Drexler.

David V. Meany, Michael, Best & Friedrich, Milwaukee, WI, for Service Painting Corp.

Richard E. Schmidt, Fellows, Piper & Schmidt, Milwaukee, WI, for Frank Povlick, Inc.

Michael P. Dunn, Davis & Kuelthau, Milwaukee, WI, for Supreme Casting, Inc.

Jeffrey P. Clark, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Milwaukee, WI, for Texaco.

Michael Pfau, Thomas Schrimpf, Hinshaw & Culbertson, Milwaukee, WI, for Ranger Ins. Co.

Richard M. Hagstrom, Zelle & Larson, Minneapolis, MN, Michael R. Wherry, Davis

& Kuelthau, Milwaukee, WI, for Employers Ins. of Wausau.

Ralph A. Weber, Kravit, Gass & Weber, Milwaukee, WI, for Travelers Companies, Inc. and Home Ins. Co.

Lawrence K. Rynning, Williams & Montgomery, Ltd., Chicago, IL, for Home Ins. Co.

Paul J. Pytlik, Otjen, Van Ert, Stangle, Lieb & Weir, Milwaukee, WI, for Hartford Acc. & Indem.

Jeffrey Leavell, Kevin Harrington, Jeffrey Leavell, S.C., Racine, WI, for Waukesha Rubber Co.

## DECISION AND ORDER

WARREN, District Judge.

Now before the Court are the motions for entry of final judgment filed by defendants Cambridge Chemical, Inc. ("Cambridge Chemical"), Cardinal Fabricating Corp. ("Cardinal"), Hartwig, Inc. ("Hartwig"), Helmut's Building Supply Service, Inc. ("Helmut's"), Robert Howell, Lincoln Savings Bank ("Lincoln Savings"), Service Painting Corp. ("Service Painting"), and Texaco, Inc. ("Texaco") pursuant to Rules 54(b) and 58 of the Federal Rules of Civil Procedure. Plaintiff Acme Printing Ink Co. ("Acme")[1] opposes these motions and has asked the Court to reconsider its prior decision granting summary judgment to these defendants. Acme has also asked the Court to reconsider part of its decision denying Acme's summary judgment motion against defendant Menard, Inc. ("Menard").

## I. BACKGROUND

### A. FACTUAL BACKGROUND

The facts of this case have been fully recounted in this Court's prior decisions, (*see Acme Printing Ink Co. v. Menard*, 870 F.Supp. 1465 (E.D.Wis.1994), *Acme Printing Ink Co. v. Menard, Inc.*, 812 F.Supp. 1498, 1507 (E.D.Wis.1992)), and will not be reiterated here. The following summary provides a general framework for the motions now pending before the Court:

This litigation relates to the clean-up of certain contaminated property ("the Fadrowski site") which had been used as an unregulated and unlicensed landfill for more than ten years. The owner of the site, Ed Fadrowski, also owned and operated a waste collection and transportation company called Ed's Masonry and Trucking ("Ed's Trucking"). Ed's Trucking hauled rubbish and solid waste for numerous clients and dumped it at several landfills in the Milwaukee area, including the Fadrowski site. Clients of Ed's Trucking include the plaintiff, Acme, and many of the defendants in this lawsuit. Defendant Menard eventually purchased the site from Fadrowski, and unearthed buried hazardous wastes on the property while undertaking an excavation project.

Hazardous wastes generated by Acme were discovered at the Fadrowski site. The plaintiff subsequently entered into a consent agreement with the Environmental Protection Agency ("EPA") and the Wisconsin Department of Natural Resources ("DNR") to conduct a Remedial Investigation and Feasibility Study ("RI/FS") and played a major role in the remediation activities at the Fadrowski site. The plaintiff now seeks contribution from other parties—including the current and past owners of the site and other generators that allegedly disposed of hazardous wastes there—for the response costs it has incurred in connection with the site pursuant to the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"). 42 U.S.C. § 9607. Acme also seeks injunctive relief and civil penalties from other responsible parties under the citizen suit provisions of the Resource Conservation and Recovery Act ("RCRA"). 42 U.S.C. § 6972.

### B. PROCEDURAL BACKGROUND

On December 5, 1994, this Court issued a Decision and Order ruling on several summary judgment motions which were before it in this case. *See Acme Printing Ink Co. v. Menard*, 870 F.Supp. 1465 (E.D.Wis.1994) (hereinafter "December 5th Order"). Therein, the Court:

1. Although the plaintiff is now named Inx International Ink Co. Inc., the Court will continue to refer to it as Acme pending receipt of the plaintiff's amended complaint.

1. Granted Acme's motion for partial summary judgment against defendant Menard on Acme's CERCLA claims but denied its motion on Acme's RCRA claims.

2. Granted defendant Bel–Aire Enterprises' motion for summary judgment on Acme's CERCLA claim, denied Bel–Aire Enterprises' motion for summary judgment on Acme's RCRA claim, and denied Acme's cross-motion for summary judgment.

3. Granted defendant Cambridge Chemical's motion for summary judgment on Acme's CERCLA and RCRA claims.

4. Granted defendant Cardinal's motion for summary judgment on the plaintiff's CERCLA and RCRA claims.

5. Granted defendant Hartwig's motion for summary judgment on Acme's CERCLA and RCRA claims.

6. Granted defendant Helmut's motion for summary judgment on the plaintiff's CERCLA claim but denied its summary judgment on the plaintiff's RCRA claim.[2]

7. Granted defendant Lincoln Savings' motion for summary judgment on Acme's CERCLA and RCRA claims.

8. Denied defendant Richard Drexler's motion for summary judgment, and denied Acme's cross-motion for summary judgment.

9. Granted defendant Robert Howell's motion for summary judgment on his liability under the plaintiff's CERCLA and RCRA claims, and denied Acme's cross-motion for summary judgment.

10. Denied defendant Pemper Engineering Co. Inc.'s motion for summary judgment, and denied Acme's cross-motion for summary judgment.

11. Granted defendant Service Painting's motion for summary judgment on Acme's CERCLA claim, denied Service Painting Corporation's motion for summary judgment on Acme's RCRA claim, and denied Acme's cross-motion for summary judgment.

12. Granted defendant Texaco's motion for summary judgment on the plaintiff's CERCLA and RCRA claim.

13. Granted defendant Williams Petroleum's motion for summary judgment on Acme's CERCLA claim, denied Williams Petroleum's motion for summary judgment on Acme's RCRA claim, and denied Acme's cross-motion for summary judgment.[3]

At a status conference held on January 5, 1995, the prevailing defendants requested entry of final judgment on the plaintiff's claims against them. The Court invited the defendants to file said motions, and gave the plaintiff the opportunity to respond. Besides opposing entry of judgment, Acme also requested reconsideration of several of the Court's decisions. The matter is now fully-briefed and ready for resolution.

## II. ACME'S MOTIONS FOR RECONSIDERATION

### A. LEGAL STANDARD

The Court's December 5th Order decided some but not all of the issues in controversy between the many parties to this lawsuit. At the request of the plaintiff, the entry of judgment was withheld. Therefore, the Court's decision granting summary judgment to some of the defendants in this case was an interlocutory order—an intervening decision "between the commencement and the end of a suit which decide[d] some point or matter, but is not a final decision of the whole controversy." *Black's Law Dictionary* (6th ed.).

▮ Whether to reconsider an interlocutory order is within the sound discretion of the district court. *See, e.g., Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir.1991) ("An interlocu-

---

**2.** The Court's December 5th Order contained an error regarding its disposition of Helmut's summary judgment motion. In the body of the decision, the Court concluded that Helmut's had deposited solid waste at the Fadrowski site and therefore denied its summary judgment on Acme's RCRA claim. *Acme,* 870 F.Supp. at 1489. However, in the summary section of this same opinion, the Court mistakenly stated that

Helmut's RCRA motion was granted. *Id.* at 1499.

**3.** The Court also granted defendant Commercial Heat Treating's motion to supplement the record. Upon considering the additional evidence submitted, on March 6, 1995, the Court denied the parties' cross-motions for summary judgment.

tory order is subject to reconsideration at any time prior to the entry of final judgment."); *Fisher v. National Railroad Passenger Corp.*, 152 F.R.D. 145, 149 (S.D.Ind. 1993) ("[I]t is well-established that a district court has the inherent power to reconsider interlocutory orders and re-open any part of a case before entry of final judgment.") (citing *Marconi Wireless Telephone Co. v. United States*, 320 U.S. 1, 47–48, 63 S.Ct. 1393, 1414–15, 87 L.Ed. 1731 (1943)). *See also* Fed.R.Civ.P. 54(b) (absent entry of final judgment under Rule 54(b), any "order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties").

◼ In contrast to a motion to reconsider a final judgment, which must meet the requirements of Federal Rules of Civil Procedure 59 or 60, a motion to reconsider an interlocutory order may be entertained and granted as justice requires. *See e.g.* Note of Advisory Committee to the 1946 Amendment to Rule 60(b) ("[I]nterlocutory judgments are not brought within the restrictions of [Rule 60(b) ], but rather they are left subject to the complete power of the court rendering them to afford such relief as justice requires."). Thus, contrary to the contentions of some of the defendants, Acme is not required to meet the requirements for relief imposed by Rule 60(b).

In our view, reconsideration of our December 5th Order is appropriate under the circumstances here present. Under the fast-track summary judgment procedure employed by the Court, the plaintiff was required to comply with an accelerated briefing schedule in responding to the summary judgment motions at issue here. These motions, unfortunately, remained pending before this Court for several years. The Court's December 5th Order was thus based upon argument and evidence that was, in some instances, over four years old. Acme claims that

new evidence has been discovered in the meantime, and asks the Court to reevaluate its holdings in light thereof. This seems only fair. Moreover, given the fast pace of the development of environmental law, we believe that the parties should be given the opportunity to argue their respective positions with the benefit of new case law. Finally, it is the Court's strongly held belief that it is in the interests of justice to decide the issues presented in this case taking into account all available information. Accordingly, the Court will reconsider its December 5th findings and conclusions.

### B. FAST-TRACK SUMMARY JUDGMENT MOTIONS

The plaintiff asks the Court to reverse its prior decision granting summary judgment to several of the fast-track defendants. As grounds for reversal, Acme asserts two different theories: (1) that the Court applied an incorrect standard in deciding the summary judgment motions; and (2) that subsequently discovered evidence conclusively links the wastes of several of the defendants to the Fadrowski site.

#### 1. *The Court's Application of the Summary Judgment Standard*

◼ The plaintiff contends that the Court erred in granting summary judgment to several defendants because the Court resolved issues of witness credibility and impermissibly weighed inferences reasonably drawn from the evidence. According to Acme, "[i]n each instance in which the Court concluded that a defendant's waste was not disposed of at the Fadrowski site, the Court explicitly and exclusively relied on the testimony of Tony Ivancich or Ed Fadrowski."[4] (Plaintiff's Combined Brief at 12.) The plaintiff further argues that, "[d]espite the genuine and substantial dispute concerning the accuracy of the two witnesses' testimony, the Court accepted the testimony, *carte blanche*,

---

**4.** In fact, in granting the summary judgment motions of defendants Hartwig and Helmut's, the Court cited the testimony of the managers of these companies to the effect that neither disposed of any hazardous waste through Ed's Trucking. *See Acme*, 870 F.Supp. at 1487–89. In granting movant-defendant Robert Howell's

summary judgment motion, the Court concluded that Howell had neither the authority to control nor undertook responsibility for Lubricants' waste disposal relying *exclusively* on the testimony and affidavit of Howell himself and that of his supervisor. *Id.* at 1491–92.

in concluding that the defendants had met their initial burden of production." (Plaintiff's Reply Brief at 10.) Finally, the plaintiff claims that "[t]he Court also relied on the disputed testimony as a basis to reject the circumstantial evidence which the plaintiff offered which tended to show that the defendants' wastes were disposed of at the Site." (*Id.*) According to Acme, this constituted a misapplication of the proper summary judgment standard and therefore justifies reversal of the Court's prior decisions.

First, Acme misinterprets the summary judgment burden shifting approach applied by the Court in its December 5th Order. While Acme is certainly correct in asserting that the party requesting summary judgment bears the initial burden of production, *see Hannon v. Turnage*, 892 F.2d 653, 656 (7th Cir.1990), *cert. denied*, 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990), a defendant moving for summary judgment may discharge this initial burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). It was, and is, the Court's view that the each of the successful defendants discharged this initial burden by pointing to Acme's failure to establish either that the particular defendant's waste was disposed of at the site or that the particular defendant's waste was hazardous.

Once this initial burden was discharged, the burden shifted to the plaintiff to "go beyond the pleadings" and designate specific facts to support each element of its cause of action, showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Whetstine v. Gates Rubber Co.*, 895 F.2d 388, 392 (7th Cir.1990). "If that nonmoving party fails to establish the existence of an element essential to his case, one on which he bears the burden of proof, summary judgment in favor of the nonmoving party is proper." *Richards v. Combined Insurance Co. of Am.*, 55 F.3d 247, 250 (7th Cir.1995) (citations omitted).

An essential element of each of Acme's causes of action is that a particular defendant's waste was disposed of at the Fadrowski site. *See Acme*, 870 F.Supp. at 1481–82 and cases cited therein. Acme thus bore the burden of showing that a reasonable jury could conclude that a particular defendant's waste was disposed of at the Fadrowski site based on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

The plaintiff is not entitled to the submission of the question to the jury merely because it introduces *some* evidence supporting its claim: "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. We concluded in many cases that the plaintiff had failed to introduce more that a "scintilla" of evidence to support its claim that a defendant's wastes was disposed of at the Fadrowski site. Acme mostly relied on what we characterized as "must have been" claims, (*Acme*, 870 F.Supp. at 1488), which generally went as follows: the defendant generated some solid or hazardous waste; the defendant hired Ed's Trucking to haul its waste on one or more occasions; Ed dumped some of the waste he hauled at the Fadrowski site; waste with general characteristics similar to those of the relatively ordinary waste disposed of by the defendant was ultimately found at the site. *See, e.g., Acme*, 870 F.Supp. at 1485–86 (Cambridge); 1486 (Cardinal); 1487–88 (Hartwig); 1489–90 (Lincoln Savings); 1495–96 (Service Painting); 1496–97 (Texaco).

A CERCLA plaintiff can survive summary judgment by introducing circumstantial evidence that a defendant's waste was disposed of at the site; it need not necessarily produce eye-witness testimony that a defendant's waste was dumped at the site. However we concluded that the evidence supporting the plaintiff's claim was too thin and that Acme's argument "amount[ed] to little more than speculation." [5] *Id.* at 1486. *See also Dana*

---

**5.** Another district court in our circuit ventured to create a standard for CERCLA plaintiffs attempt-

ing to survive summary judgment using circumstantial evidence as follows:

Corp. v. American Standard, Inc., 866 F.Supp. 1481, 1497–98 (N.D.Ind.1994) (to survive summary judgment, "there must be something more than testimony that something 'could be' or 'might be' "). The Seventh Circuit has made it clear that "[s]peculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995).

Our conclusion that the plaintiff failed to introduce sufficient evidence to establish that any particular defendant's waste had in fact been disposed of at the site was bolstered by affirmative evidence introduced by each of the defendants which suggested that Ed's general practice was to dump solid wastes at the Fadrowski site and other wastes (usually rubbish) at other landfills. It is relatively clear that Ed's departed from this practice and that some loads of rubbish were dumped at the Fadrowski site, although it is not clear how many. However, given this general practice, several defendants argued that since they disposed of rubbish through Ed's Trucking, the probability of their wastes going to the Fadrowski site was very small. In support of this argument, the defendants necessarily relied on the testimony of Ivancich and Fadrowski—the *only direct witnesses to the disposal procedures in question.* While Acme is correct in asserting that it is improper for the Court to weigh credibility or draw inferences in favor of a summary judgment movant, *see Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11, relying in part on the testimony of Ivancich and Fadrowski

"If the plaintiff demonstrates that the defendant produced a continuous and predictable waste stream that included hazardous constituents of the sort eventually found at the site, and that at least some significant part of that continuous and predictable waste stream was disposed of at the site, the factfinder reasonably may infer that the defendant's hazardous waste was disposed of at the site. If the plaintiff cannot demonstrate such a continuous and predictable waste stream, or is unable to show that a significant part of the defendant's waste stream reached the site, the plaintiff must present some further evidence to justify a reasonable factfinder in inferring that the defendant contributed to the hazardous wastes at the site."

does not necessarily involve weighing their credibility. Even if a jury disbelieved the testimony of Fadrowski and Ivancich, what would be left? Certainly not a competing, alternate version of events, since there is no other direct evidence of which loads of waste were disposed of where. Even if a jury was to disregard this testimony, it would still be left with Acme's tenuous chain of inferences which we consider too speculative to survive summary judgment.

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex*, 477 at 327, 106 S.Ct. at 2555 (quoting Fed. R.Civ.P. 1). In our view, the general guaranty of Rule 56 to permit parties to defend against claims that have no factual basis prior to trial is especially important under statutes with broad, sweeping liability such as CERCLA. Where, as here, a plaintiff cannot introduce more than a scintilla of evidence tying a particular defendant's waste to a site, summary judgment is clearly appropriate. The summary judgment standard was appropriately applied to the motions of the fast-track defendants. Accordingly, the Court will not reconsider its December 5th Order on this basis.

### 2. *Newly Discovered Evidence*

Acme next argues that the Court's summary judgment orders in favor of Service Painting, Texaco, and Cambridge Chemical should be reconsidered in light of subsequently discovered evidence.[6] We will con-

*Dana Corp. v. American Standard, Inc.*, 866 F.Supp. 1481, 1489 (N.D.Ind.1994). Clearly the sporadic waste disposal activities of the fast-track defendants fall short of satisfying this standard.

**6.** In its reply brief, Acme appears to argue that new evidence also justifies reconsideration of our orders with respect to Lincoln Savings, Cardinal Fabricating, and Hartwig. (Plaintiff's Reply Brief at pp. 27–28.) Acme, however, has not introduced any such evidence relating to these defendants. Accordingly, our analysis in section II.B.1., rejecting reconsideration generally, applies to these defendants.

sider the new evidence offered by Acme against each defendant in turn.

### a. Service Painting

In its December 5th Order, the Court carefully analyzed the evidence presented with respect to Service Painting's waste disposal activities. That evidence clearly indicated that Service Painting had disposed of two different types of waste through Ed's Trucking: sandblasting sand, and empty paint cans and barrels. *Acme*, 870 F.Supp. at 1494. It was undisputed that the sandblasting sand was disposed of at the Fadrowski site;[7] however, Acme made no attempt to show that this sand contained hazardous substances. *Id.* at 1495–96. It was clear that the empty paint barrels did contain potentially hazardous substances, but we concluded that the plaintiff failed to meet its burden of creating a triable issue as to whether these barrels and cans were disposed of at the Fadrowski site. *Id.* Accordingly, we granted Service Painting's summary judgment motion with respect to Acme's CERCLA claims (because Acme failed to make a showing that it could prove hazardous substances were dumped at the site) and denied Service Painting's motion with respect to Acme's RCRA claims (because it was undisputed that Service Painting had disposed of solid waste at the Fadrowski site). *Id.* at 1496.

Acme now claims that dismissal of its CERCLA claims against Service Painting is inappropriate because it has discovered that the sandblasting sand disposed of at the Fadrowski site did in fact contain hazardous substances. Apparently, the City of Milwaukee hired Ruffalo Decorating Co. ("Ruffalo") to sandblast and repaint the 35th Street Viaduct in 1977. *Affidavit of Dana Huck*, Exh. B. Service Painting was a subcontractor of Ruffalo, hired to sandblast the viaduct. *Huck Aff.*, Exh. D. Service Painting hired Ed's Trucking to remove the used sandblast-

ing sand from this job. *Huck Aff.*, Exh. E. The paint that Service Painting allegedly removed via sandblasting contained high levels of hazardous substances. *See Huck Aff.*, Exh. C, SIGMA Environmental Services, "Evaluation of Existing Paint Systems for Environmental Considerations, 35th Street Viaduct, Milwaukee, Wisconsin," pp. i, 1–4 (July 10, 1991) ("SIGMA Report").[8] The residual sandblasting sand from this project could have contained hazardous substances similar to those found at the site; namely, lead, zinc, barium and chromium. *See* SIGMA Report, p. i; *Affidavit of Michael Radcliffe* ¶¶ 15, 16, 19(d).

Acme argues that this evidence "conclusively demonstrates" that the sandblasting sand disposed of by Service Painting at the Fadrowski site contained hazardous substances and thus asks the Court, not only to reconsider its prior decision absolving Service Painting of CERCLA liability, but to find that Service Painting is liable as a generator of hazardous wastes as a matter of law.

In response, Service Painting contends that it is inappropriate to assume that paint residue from an outdoor structure would be found in the used sandblasting sand. It relies on the affidavit of Ralph Koepke, the Executive Vice President of Service Painting, which states that in general, (1) the purpose of outdoor sandblasting is to prepare the surface for painting, and oftentimes the prior coat of paint has already been removed, (*Koepke Aff.* ¶ 7), (2) frequently commercial sandblasting is used only to score the paint surface and to remove the paint entirely, (*Id.* ¶ 8), and (3) even if the sandblasting was used for paint removal, it is likely that the paint particles were dispersed away from the remaining sand. (*Id.* ¶ 9.) Therefore, according to Service Painting, because there is no evidence which proves that the sandblast-

---

7. Service Painting apparently withdraws its prior concession that the sandblasting sand was dumped at the Fadrowski site. The Court will nevertheless accept the uncontradicted testimony of Anthony Ivancich to the effect that Service Painting's solid fill was dumped at the Fadrowski site and will reaffirm its prior finding that the Service Painting sandblasting sand was dumped at the site. *See Acme*, 870 F.Supp. at 1495.

8. Service Painting has moved to strike this report as inadmissible hearsay. However, for purposes of this motion, the Court concludes that the report is admissible as a public record or report pursuant to Federal Rule of Evidence 803(8) properly authenticated pursuant to Federal Rule of Evidence 902(4). Accordingly, Service Painting's motion to strike will be denied.

ing sand containing hazardous substances was transported to the Fadrowski site, the plaintiff is again left with unsupported speculation. Accordingly, Service Painting asks us to reaffirm our decision granting its summary judgment motion.

■ Service Painting's argument, however, is based on a misinterpretation of the standard for generator liability under CERCLA. Acme is not required to "fingerprint" the waste of each and every generator defendant. Because it is undisputed that the sandblasting sand was disposed of at the Fadrowski site, Acme can establish a prima facie case of CERCLA generator liability by simply showing that hazardous substances similar to those contained in the defendant's waste were present at the site. *See United States v. Monsanto,* 858 F.2d 160, 169 n. 15 (4th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989); *Violet v. Picillo,* 648 F.Supp. 1283, 1292 (D.R.I. 1986); *United States v. Wade,* 577 F.Supp. 1326, 1333 (E.D.Penn.1983). *See also Acme,* 870 F.Supp. at 1497 ("Acme does benefit from the presumption that it attempts to invoke elsewhere: having established that the defendant's waste was disposed of at the Fadrowski site and that the defendant's waste generally matches the waste found at the site, Acme has satisfied its prima facie case on its CERCLA claims."). In our view, the additional evidence introduced by Acme is sufficient to create a genuine factual issue as to whether the waste disposed of by this defendant at the Fadrowski site was hazardous. However, we do not view Acme's evidence as sufficiently compelling to justify summary judgment in its favor. It would not be unreasonable for a jury to conclude that Acme has not met its burden of proving that the sandblasting residue contained contaminated paint chips. Accordingly, the Court will amend its December 5th Order and deny Service Painting's motion for summary judgment on Acme's CERCLA claims in this regard.

In addition, Acme claims that it has discovered additional containers of waste at the Fadrowski site, a large percentage of which is paint or paint-related wastes. According to Acme, at least twenty (20) barrels of waste were identified as containing paint or paint wastes. (*Affidavit of Michael Rouse* ¶ 10; *Affidavit of Terry March* ¶ 10.) It argues that Service Painting is the only customer of Ed's Trucking that has admitted to disposing of barrels of paint. Thus, it urges the Court to reverse its summary judgment order on this basis as well.

■ Basically, Acme is attempting to rely on the same arguments upon which it relied in its initial opposition to Service Painting's summary judgment motion. Only this time Acme argues that because more paint cans and barrels of paint were found at the Fadrowski site, the inferences supporting its argument are stronger. In its prior order, the Court concluded as follows: "The fact that relatively common waste—paint cans— was found at the site, and that when pressed, Ivancich speculated that it could have been Service Painting's waste, is simply not enough to survive summary judgment." *Acme,* 870 F.Supp. at 1496. The fact that the plaintiff has discovered additional paint cans and barrels of paint at the site does not strengthen its position. Acme still relies on a mere scintilla of evidence to support an essential element of its CERCLA cause of action: that this particular defendant's waste was disposed of at the Fadrowski site. Acme admits that other customers of Ed's Trucking generated paint-related wastes. (Plaintiff's Combined Brief at 35.) Moreover, the fact that Acme has no documented evidence of Ed's Trucking hauling paint-related wastes for parties other than Service Painting does not prove that Service disposed of these wastes at the site. The plaintiff's speculation is especially unpersuasive in light of the uncontradicted testimony of Tony Ivancich that Ed's Trucking dumped the Service Painting paint barrels at the County landfill. *See Acme,* 870 F.Supp. at 1495 (summarizing Ivancich deposition testimony). The fact that Acme has discovered more barrels at the site makes no difference.

Therefore, because we conclude that Acme has not introduced sufficient evidence from which a reasonable jury could find that Service Painting disposed of paint-related wastes at the Fadrowski site, we reaffirm our prior holding granting Service Painting's summary

judgment motion in this regard. However, because we conclude that there is a material factual dispute relating to whether the sand-blasting sand disposed of by Service Painting at the Fadrowski site contained hazardous substances, we will grant Acme's motion for reconsideration and will deny this defendant's summary judgment motion in this regard.

#### b. *Texaco*

Acme also contends that newly discovered evidence justifies reconsideration of this Court's decision granting summary judgment to Texaco. According to the plaintiff, approximately twenty-one (21) drums of waste were removed from the Fadrowski site that were identified as having been generated by vehicle maintenance or service station type operations. (*See Rouse Aff.* ¶ 11; *March Aff.* ¶¶ 8, 9.) The wastes found therein included waste oil which was sufficiently contaminated to constitute a hazardous substance under CERCLA. (*March Aff.* ¶ 9.) Based on this information, Acme makes the following conclusory argument: "Only a few of Ed's Trucking's customers generated these types of wastes. Of those customers, *only* Texaco generated the volume of these types of wastes ... which would account for the volume of service station and vehicle maintenance wastes that were actually excavated and removed from the landfill for treatment and disposal." (Plaintiff's Combined Brief at 36.) [9]

In response, Texaco argues that Acme has still failed to introduce evidence sufficient to create an issue for trial with respect to whether Texaco waste was ever disposed of at the Fadrowski site for the following reasons: (1) Acme cannot show that it knows the complete list of Ed's Trucking's customers or that only Ed's Trucking dumped waste at the Fadrowski site; (2) Acme has offered no evidence to support its argument that only Texaco could have generated this amount of service station waste; and (3) because only four (4) of the twenty (20) barrels of waste contained hazardous substances, Acme's suggestion that only Texaco could have generated this amount of waste is especially conjectural and speculative. (Texaco's Combined Brief at 7.) In addition, Texaco relies on the deposition and affidavit of Robert Schreiner, overlooked by the Court in its December 5th Order. Schreiner operated a waste oil hauling business and claims to have collected waste oil from various Texaco service stations and disposed of it at licensed waste oil processing facilities, not at the Fadrowski site. (*Affidavit of Robert Schreiner* ¶ 2–4. *See also Deposition of Robert W. Schreiner* at 42–46.) Schreiner's statement is consistent with the testimony of Ivancich, who stated that Texaco waste consisted of "rubbish" which he thought went to the County landfill. *See Acme,* 870 F.Supp. at 1496 (summarizing Ivancich deposition testimony).

■ In our view, the plaintiff has introduced insufficient evidence to show that it could establish that Texaco waste was disposed of at the Fadrowski site. The fact that more service station waste was discovered at the Fadrowski site does not change the fact that Acme cannot tie Texaco to the site. Acme's speculative argument is especially unpersuasive in light of the affirmative evidence (provided by Robert Schreiner and Tony Ivancich) that Texaco's service station waste was disposed of elsewhere. Accordingly, because we conclude that the plaintiff has not created a triable issue with respect to an essential element of its cause of action, we will reaffirm our decision granting Texaco's summary judgment motion.

#### c. *Cambridge Chemical*

Acme seeks reconsideration of the Court's decision granting summary judgment to defendant Cambridge Chemical based upon the discovery of a 55 gallon Dow Chemical carbon tetrachloride drum at the Fadrowski site. (*See Rouse Aff.* ¶ 13.) According to Acme, Cambridge is the only defendant which is documented to have purchased carbon tetrachloride or to have used the chemical in its operations. Acme claims that this is strong circumstantial evidence that Cambridge's waste was disposed of at the Fa-

---

9. Interestingly, in support of this argument, Acme cites the supposedly incredible deposition testimony of Tony Ivancich. (*See* Plaintiff's Reply Brief at 25.)

drowski site, and is sufficient to create a genuine factual dispute inappropriately resolved via summary judgment.

■ Cambridge Chemical disagrees. First, it disputes whether this new drum Acme allegedly discovered was in fact labelled "carbon tetrachloride" as claimed by Acme. (*See Affidavit of Bruce C. O'Neil* ¶ 2.) In our view, how the drum was labelled is a genuine dispute of fact which we will not attempt to resolve in this motion. Resolution of this dispute is unnecessary, however, because the fact in question is immaterial. The fact that Acme discovered a 55 gallon drum labelled "carbon tetrachloride" does not add any weight to the speculative arguments it originally put forth in opposition to Cambridge Chemical's summary judgment motion. While it is true that Cambridge Chemical admitted to purchasing carbon tetrachloride, it only purchased *4,000 grams* of the substance (in 1978) and had not used any of the chemical by October 31, 1979. (*Deposition of James Pykett* at 73, Exh. 338; *Affidavit of James Pykett* ¶ 3) Cambridge used Ed's Trucking on only four occasions *prior* to October 31, 1979. (*Pykett Aff.* at ¶ 4.)

Inasmuch as this new evidence submitted by the plaintiff has virtually no probative value, it is left to rely on the argument we have already rejected as speculative. As was the case with several other fast-track defendants, our conclusion that Acme could not show that this defendant's waste went to the Fadrowski site was bolstered by the testimony of Ivancich, to the effect that, to the best of his memory, he picked up rubbish from Cambridge which was ultimately dumped at either the County landfill or the Nype landfill. *See Acme,* 870 F.Supp. at 1485. We reaffirm our prior conclusion and reasoning. Acme's motion for reconsideration will thus be denied.[10]

## C. DISMISSAL OF 42 U.S.C. § 6972(A)(1)(A) CLAIM AGAINST DEFENDANT MENARD

Under the regulatory enforcement citizen suit provision of RCRA, a private citizen may file suit "against any person ... who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition or order." 42 U.S.C. § 6972(a)(1)(A). In its December 5th Order, the Court denied the plaintiff's motion for partial summary judgment against defendant Menard on this cause of action, concluding that, because Menard is not currently operating and has never operated a hazardous waste facility, it cannot be liable for violating the Wisconsin Hazardous Waste Management Plan ("WHWMP") because it was never subject to the plan's regulations.[11] *Acme,* 870 F.Supp. at 1478. The plaintiff has asked the Court to reconsider this decision and to order Menard to comply with the statutory and regulatory requirements and declare that Menard is subject to civil penalties under the statute.

Acme first urges the Court to reconsider its prior decision because the violations of RCRA it alleges are not wholly past, but rather are continuing. In support of this argument, Acme relies on several cases in which private citizens have sought injunctive relief to compel compliance with statutes and regulations governing the operation and closure of hazardous waste facilities. *See City of Toledo v. Beazer Materials and Services,* 833 F.Supp. 646 (N.D.Ohio 1993); *Sierra Club v. Chemical Handling Corp.,* 824 F.Supp. 195 (D.Colo.1993); *Gache v. Harrison,* 813 F.Supp. 1037 (S.D.N.Y.1993); *Fallowfield Development Corp. v. Strunk,* 1990 WL 52745 (E.D.Penn.1990); *United States v. Environmental Waste Control,* 710 F.Supp. 1172 (N.D.Ind.1989), *aff'd,* 917 F.2d 327 (7th Cir.1990), *cert. denied,* 499 U.S. 975, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991). These cases all hold that, although this section of RCRA does not permit a citizen suit for wholly past violations of the statute, *see Gwaltney v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 57, 108 S.Ct. 376, 381, 98 L.Ed.2d 306 (1987), "[t]he continued presence of illegally dumped materials ... could con-

---

10. Although we reject the plaintiff's argument, we do not consider it frivolous. Accordingly, Cambridge Chemical's request for Rule 11 sanctions is denied.

11. The WHWMP operates in lieu of the regulations of RCRA. *See Acme,* 870 F.Supp. at 1474–75.

stitute a continuing violation of RCRA," cognizable under section 6972(a)(1)(A). *Gache,* 813 F.Supp. at 1041. The *Fallowfield* Court summarized the gist of the holdings of all of these cases as follows:

> If a person disposes of hazardous waste on a parcel of property, the hazardous waste remains in that property, insidiously infecting the soil and groundwater aquifers. In other words, the violation continues until the proper disposal procedures are put into effect or the hazardous waste is cleaned up.
>
> \*　　\*　　\*
>
> Because improperly disposed of hazardous waste remains a remedial threat to the environment, this Court believes that Congress intended to allow citizen suits under section 7002 [6972] of RCRA for past violations where the effects of the violation remain remediable.

*Fallowfield,* 1990 WL 52745 at \*\*10, 11. This Court reached the same conclusion in a prior order related to this case. *See Acme,* 812 F.Supp. at 1512 ("RCRA includes in its broad definition of 'disposal' the continuous leaking of hazardous substances.... Accordingly, leaking of hazardous substances may constitute a continuous or intermittent violation of RCRA.").

■ We have no quarrel with the plaintiff's contention that the disposal of hazardous waste can constitute a continuing violation of RCRA and can support a cause of action under section 6972(a)(1)(A). Language in the Court's December 5th Order may have suggested otherwise. We ended our analysis of Menard's liability under this section of RCRA with the following statement: "Therefore, the Court concludes that section 6972(a)(1)(A) does not apply to the Fadrowski site because Menard is not currently operating, nor has it operated, a haz-

ardous waste facility." *Acme,* 870 F.Supp. at 1478. This conclusion is incorrect. Clearly, the *Fadrowski site* was subject to RCRA and the WHWMP. Accordingly, parties responsible for operating that facility—Ed Fadrowski, for instance—could be liable under section 6972(a)(1)(A) for violating the regulations of the WHWMP, even though the waste disposal took place in the past.[12]

However, our decision exempting Menard from liability under this section was not based on the fact that the disposal of hazardous waste took place in the past, but rather was based on the fact that *Menard* had never violated the regulations of RCRA and the WHWMP. *See Acme,* 870 F.Supp. at 1477 ("[T]he Court concludes that Menard is not the owner of an *operating* hazardous waste facility, and is therefore not subject to—and thus not in violation of—the WHWMP statute and regulations."). The citizen suit provision of RCRA which underlies this cause of action authorizes a private action against "any person alleged to be in violation" of the WHWMP. The violations of the WHWMP alleged by the plaintiff all relate to regulations governing the operation of a hazardous waste facility.[13] *See Acme,* 870 F.Supp. at 1476. Therefore, only those entities which are operating a hazardous waste facility (or were operating a hazardous waste facility) can be subject to, and thus in violation of, the regulations. The Court remains convinced that Menard cannot be held liable for violating the regulations for operating a hazardous waste facility because it never operated a hazardous waste facility.[14]

None of the cases cited by the plaintiff in support of its motion for reconsideration persuade us to conclude otherwise. In each of theses cases, the defendant that was held liable under this section for past violations of RCRA had owned an operating hazardous

---

12. Accordingly, the Court's conclusion in its March 28, 1995 Order that permitting the plaintiff to amend its complaint to add RCRA claims against additional generator defendants would be futile may be in error. The plaintiff is therefore invited to submit a motion for reconsideration of this decision.

13. The WHWMP also regulates generators' disposal, transportation, and storage of hazardous

waste. However, the plaintiff does not allege that Menard violated any of these regulations.

14. We reject the plaintiff's contention that Menard's excavation of the Fadrowski site—the act which commenced both this lawsuit and the clean-up of the site—constitutes operating a hazardous waste facility.

waste facility. *See Beazer,* 833 F.Supp. at 649 (defendant owned and operated waste disposal site); *Sierra Club,* 824 F.Supp. at 196 (defendant alleged to have stored hazardous waste without permit); *Gache,* 813 F.Supp. at 1039 (defendant owned site and disposed of waste there); *Fallowfield,* 1990 WL 52745 at *1 (defendant owned property and disposed of wastes there); *Environmental Waste Control,* 710 F.Supp. at 1180 (defendants actual operators or owners of entity that operated hazardous waste facility). In contrast, Menard never operated a hazardous waste facility. It purchased a site which had been used as a hazardous waste facility. However, the WHWMP does not regulate former hazardous waste facilities. *See Acme,* 870 F.Supp. at 1477.

The plaintiff's policy-based arguments in support of its motion are similarly unpersuasive. Acme contends that by failing to hold Menard liable under section 6972(a)(1)(A), the Court will permit owners of hazardous waste facilities to control their own RCRA liability: "By simply ceasing to 'operate' before or even after a citizen suit is filed under § 6972(a)(1)(A), any owner of a hazardous waste facility that was previously operating … can entirely avoid liability for the harmful, continuing effects of their regulatory violations. Worse, by simply ceasing to 'operate,' the owner of a hazardous waste facility can effectively self-exempt themselves from some of the most environmentally important and protective regulations." (Plaintiff's Combined Brief at 40. *See also Fallowfield,* 1990 WL 52745 at *10.) We agree with the plaintiff and the *Fallowfield* Court that Congress could not have intended to allow an owner or operator of a hazardous waste facility to control his own liability in this manner. However, this scenario is inapplicable to the circumstances here present. Menard never operated a hazardous waste facility; it did not simply cease operating in an attempt to avoid RCRA liability.

The plaintiff also argues that releasing Menard from section 6972(a)(1)(A) liability will eviscerate state and federal environmental enforcement and will disenfranchise citizens of the relief and cause of action Congress intended. In our view, these fears are greatly exaggerated, especially in light of other provisions of RCRA and CERCLA. First, private citizens and governmental authorities may still enforce the provisions of the WHWMP against entities that actually operate or operated hazardous waste facilities, as well as against the generators of the hazardous waste disposed of there. Under our reading of the statute, citizens are simply precluded from enforcing operational regulations against parties who are not and never were operating a hazardous waste facility. Moreover, RCRA does permit citizen suits against parties who have "contributed to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). An injunction and civil penalties are available under this provision. 42 U.S.C. § 6972(a). Injunctive relief is also available to the EPA to remedy an imminent and substantial hazard under a different section of RCRA. 42 U.S.C. § 6973. Finally, CERCLA provides that the current owner of virtually any property where hazardous waste is found can be held liable for the costs associated with the clean-up of the site. *See* 42 U.S.C. §§ 9601(9), 9607(a). In fact, this Court has already concluded that Menard is liable under CERCLA as a matter of law. *Acme,* 870 F.Supp. at 1480.

For the foregoing reasons and for those articulated in our December 5th Order, *see id.* at 1476–78, we reaffirm our holding that Acme cannot maintain a cause of action against Menard pursuant to 42 U.S.C. § 6972(a)(1)(A). Accordingly, we reaffirm our decision denying the plaintiff's summary judgment motion regarding this cause of action.

### III. FAST–TRACK DEFENDANTS' MOTIONS FOR ENTRY OF FINAL JUDGMENT

#### A. LEGAL STANDARD

■ Under Rule 54 of the Federal Rules of Civil Procedure, in a case involving multiple claims or multiple parties, after the district court resolves at least one but fewer than all of the pending claims, it may, in its

discretion, direct the entry of a final, appealable judgment if there is no just reason for delay. *See* Fed.R.Civ.P. 54(b). The district court's decision on a Rule 54(b) motion must be governed by principles of sound judicial administration. *See Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 6, 100 S.Ct. 1460, 1464, 64 L.Ed.2d 1 (1980). There is, however, a slight bias against entering final partial judgment, in light of the strong federal policy against piecemeal appeals. *U.S. General, Inc. v. City of Joliet*, 598 F.2d 1050, 1051 n. 1 (7th Cir.1979) (citing 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2659).

The Seventh Circuit has adopted the Third Circuit's noninclusive list of factors a district court should consider in determining whether there is no just reason to delay entering final partial judgment. The five factors are:

> (1) The relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Bank of Lincolnwood v. Federal Leasing, Inc.*, 622 F.2d 944, 949 (7th Cir.1980) (quoting *Allis–Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360, 364 (3d Cir.1975)).

**B.** *ANALYSIS*

 Entry of final partial judgment under Rule 54(b) is clearly inappropriate for two of the moving defendants. Defendant Service Painting's summary judgment motion was originally denied with respect to the plaintiff's RCRA claim, and given our deci-

sion to reconsider entry of summary judgment on the plaintiff's CERCLA claim, there is thus no final judgment with respect to this defendant. Therefore, entry of judgment in favor of Service Painting pursuant to Rule 54(b) would be inappropriate. Moreover, several of the *Bank of Lincolnwood* factors weigh against entering judgment in favor of defendant Helmut's Building Supply. Although the Court has reached a final decision on the plaintiff's CERCLA claim against this defendant, Acme's RCRA claim against Helmut's remains. This unadjudicated claim is closely related to the adjudicated claim; both revolve around the waste disposal activities of this defendant. The existence of the remaining RCRA claim also presents considerable risk of the Court having to review the factual basis of Acme's claims against Helmut's a second time. Finally, considerations of judicial economy militate against splitting-off one cause of action against this defendant from the other. Accordingly, we will not enter judgment in Helmut's favor at this time.

 However, with respect to the remaining successful fast-track defendants (Cambridge Chemical, Cardinal, Hartwig, Robert Howell, Lincoln Savings, and Texaco), it is our view that the entry of judgment is appropriate. Failure to enter judgment in favor of these defendants would be entirely inconsistent with the purpose of this Court's fast-track summary judgment procedure. As a mechanism for managing this complex, multi-party litigation, the Court provided the generator defendants with the opportunity to make an early exit from this case by demonstrating their lack of responsibility for the contamination at the Fadrowski site.[15] Although we have been somewhat remiss in fulfilling that vision, we see no reason to abandon the goal of the fast-track procedure now.

Moreover, the balance of the *Bank of Lincolnwood* factors weigh in favor of entering

---

**15.** In fashioning the fast-track summary judgment procedure, the Court asked: "How many of you consider yourselves poor little benighted small business non-pollutants, who are going to file fact based summary judgment motions? 17. It strikes me that we ought to give an opportunity for those to get out that really have some merit

to their argument fairly early on because none of you folks [lawyers] come cheap." (Transcript of Hearing (February 12, 1990) at pp. 36–37.) The Court went on to comment that the purpose of this fast-track procedure was to "see if we can winnow out some of the parties and get the lawsuit streamlined a little bit." (*Id.* at p. 47.)

final judgment. The fact of the matter is that after six years since the filing of this lawsuit, the plaintiff has been unable to discover any evidence from which a reasonable jury could conclude that any of the defendants' wastes were disposed of at the Fadrowski site. The unadjudicated claims against other defendants have no significant factual relationship to the claims against these defendants, nor are there other claims or counterclaims that have any relevance to this judgment. Furthermore, we see no possibility that review would be mooted by future developments in this Court. Although there is a possibility that the reviewing court might be obliged to consider the legal issues underlying this decision a second time, the facts underlying our summary judgment orders are unique to these defendants.

At the very least, these successful fast-track defendants are entitled to benefit from the res judicata effect of a final judgment. As discussed above, absent entry of judgment our decision granting summary judgment in favor of these defendants may be freely reconsidered and altered. Once judgment is entered, the plaintiff will have to satisfy the stricter requirements of Federal Rule of Civil Procedure 60 in order to obtain relief from the judgment. Moreover, these fast-track defendants should not be required to incur additional legal expenses necessary to continue to monitor the developments in this case. Accordingly, the Court concludes that there is no just reason to delay entry of final judgment in favor of Cambridge Chemical, Cardinal, Hartwig, Robert Howell, Lincoln Savings, and Texaco.

## IV. *SUMMARY AND ORDER*

Therefore, for the foregoing reasons, IT IS HEREBY ORDERED THAT:

1. Acme's motion for reconsideration of the Court's December 5th Order granting summary judgment to fast-track defendants Cambridge Chemical, Cardinal, Hartwig, Lincoln Savings, and Texaco is denied;

2. Acme's motion for reconsideration of the Court's December 5th Order granting summary judgment to defendant Service Painting is granted; the Court's order dismissing the plaintiff's CERCLA claim against this defendant is therefore reversed with respect to the Acme's allegation that the solid waste disposed of by Service Painting at the Fadrowski site contained hazardous substances;

3. Acme's motion for reconsideration of the Court's December 5th Order denying its summary judgment motion against defendant Menard relating to Acme's claims under 42 U.S.C. § 6972(a)(1)(A) is denied;

4. The Clerk of Courts shall enter final partial judgment pursuant to Federal Rule of Civil Procedure 54(b) in favor of fast-track defendants Cambridge Chemical, Cardinal, Hartwig, Robert Howell, Lincoln Savings, and Texaco.

5. The remaining parties in this litigation shall submit a proposed scheduling order for the disposition of the remaining issues in this case within thirty (30) days of the date of this order. The plaintiff shall draft a proposed order in consultation with the defendants. Any objections to the proposed order shall be communicated to the Court within five (5) days of its submission.

**SO ORDERED.**