**PIVOT POINT INTERNATIONAL, INC.,**
an Illinois corporation, Plaintiff,

v.

**CHARLENE PRODUCTS, INC.,**
an Illinois corporation, and
Peter Yau, Defendants.

**No. 90 C 6933.**

United States District Court,
N.D. Illinois, E.D.

March 10, 1993.

Robert E. Browne, Mark D. Chapleau, Thomas C. McDonough, Jeannine M. Pisoni, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for plaintiff.

Thomas J. Ring, Camille M. Miller, Potthast & Ring, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This is a copyright dispute recently transferred to this Court. Plaintiff, Pivot Point International, Inc. ("Pivot Point") moves this Court to reconsider the decision of the previous district court, dated September 11, 1992

(the "September Order"), granting partial summary judgment to the defendants, Charlene Products, Inc. ("Charlene") and Peter Yau, Charlene's [some officer]. For the following reasons, the motion is granted and the September Order is vacated.

Pivot Point is an Illinois Corporation engaged in the business of hair styling, design education and the sale of products that relate to that business. One of Pivot Point's products is the "Mara Sculpture," a plastic female mannequin head. The Mara Sculpture is sold by Pivot Point as a teaching aid for beauty schools and salons. The Mara Sculpture was sculpted by an artist and then copyrighted as a bareheaded human head with no make-up or hair. The parties are in dispute over the uses of the Mara Sculpture. The plaintiffs claim that the Mara Sculpture is the equivalent of what might be called a hair stand. The sculptures are mass produced. Hair of various lengths and colors is implanted in the heads and then the entire product is sold to beauty shops for training hairstylists. The defendants claim that in addition to being a hairstand, the Mara Sculpture is used for displaying makeup, jewelry, and other ornamentation.

On November 29, 1990, Pivot Point filed a complaint against Charlene Products, Inc., an Illinois corporation in the business of hair styling and design education and the sale of products related to that business, ("CPI"), and Peter Yau, the President of CPI. Pivot Point alleges that CPI and Yau infringed upon Pivot Point's copyright on the Mara Sculpture by copying it and then marketing and displaying it as a slightly smaller mannequin head, commonly known as "Liza." Pivot Point's Complaint contains two counts. Count I alleges copyright infringement under 17 U.S.C. §§ 106 and 602. Count II alleges misappropriation. In the September Order, the previous district court granted defendants CPI and Yau summary judgment on Count I. Pivot Point moves for reconsideration of that decision.

### A. The Timeliness of Service of Plaintiff's Motion

Plaintiffs initially moved for reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. Under that rule, a party seeking reconsideration of a final or appealable judgment has 10 days from the judgment in which to serve the opposing party.[1] Here plaintiff effected service within 11 days, missing proper service by less than one hour and fifteen minutes.[2] Having failed to properly serve the defendants pursuant to Rule 59(e), plaintiff now claims that its motion to reconsider is properly made pursuant to Rule 54(b). Under Rule 54(b) a court may reconsider any order not certified for appeal when the order in question did not resolve all the claims of all the parties in the action. Fed.R.Civ.P. 54(b).[3]

Motions to reconsider are governed by Rule 54(b) when such motions are filed after an interlocutory order and before the entry of a "final judgment." *See Gridley v. Cleveland Pneumatic Co.*, 127 F.R.D. 102, 103 (M.D.Pa.1989). Motions to reconsider made after a final judgment or after a trial are governed by Rules 59(e) and 60(b). *See id.* The timeliness of plaintiff's motion to reconsider turns on whether the September 11, 1992 order by Judge Parsons granting partial summary judgment was a final judg-

---

1. Rule 59(e) states:

   A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

2. On the last day of the Rule 59(e) deadline, a Friday, plaintiff attempted service by messenger. The messenger service was late in delivering the papers, arriving at the offices of the defendant's law firm at 6:15 p.m. The last attorney had left the law firm at 6:00 p.m. Service was thus late either by fifteen minutes or by an hour and fifteen minutes.

   Defendant was not properly served until 9:00 a.m. the following Monday.

3. Rule 54(b) says:

   When more than one claim for relief is presented in an action ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

ment. If the order was final, the motion to reconsider is governed by Rule 59(e) and is thus untimely. In contrast, if the September 11 order was not a final judgment, then the motion is governed by Rule 54(b). Rule 54(b) motions to reconsider do not have express service or filing requirements. Such motions may be brought within a reasonable period after an interlocutory order during the pendency of the litigation. *See A. Hollow Metal Warehouse, Inc. v. U.S. Fidelity and Guarantee Co.*, 700 F.Supp. 410, 411–12 (N.D.Ill.1988) (stating that a motion to reconsider an interlocutory order has no time constraints under the Federal Rules of Civil Procedure).

Judgment is defined for the purposes of the Federal Rules of Civil Procedure in Rule 54(a). That rule says:

> "Judgment" as used in these rules includes a decree and *any order from which an appeal lies.* A judgment shall not contain a recital of pleadings, the report of a master, or the record of prior proceedings.

Fed.R.Civ.P. 54(a) (emphasis added). At issue is whether the September Order denying injunctive relief was appealable.

Here, Pivot Point sought relief in two counts, Count I of the complaint alleges copyright infringement, Count II of the complaint alleges misappropriation.[4] The order granted summary judgment on the first of those counts. Defendants maintain that the partial summary judgment order is appealable under 28 U.S.C. § 1292(a). That section, in relevant part, says:

> [T]he courts of appeals shall have jurisdiction of appeals from:
>
> (1) Interlocutory orders of the district courts of the United States, ... or the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions,
>
> ...

28 U.S.C. § 1292(a)(1). Although Judge Parson's refused to grant an injunction, section 1292(a)(1) does not apply to this case.

Before the Supreme Court's decision in *Carson v. American Brands, Inc.*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), almost any finding of summary judgment denying an injunction was appealable. *See*

*Brown v. Kerr–McGee Chemical Corp.*, 767 F.2d 1234, 1237 (7th Cir.1985). In *Carson*, the Supreme Court limited the scope of section 1292(a)(1) by requiring that an interlocutory summary judgment order have a "serious, perhaps irreparable, consequence" and that the order be "effectually challenged" only on immediate appeal. *Carson*, 450 U.S. at 84, 101 S.Ct. at 996; *Brown v. Kerr–McGee*, 767 F.2d at 1238.

The Court of Appeals for the Seventh Circuit has endorsed two different applications of *Carson*. In *Winterland Concessions Co. v. Trela*, the Seventh Circuit read *Carson* to apply only to interlocutory orders "that did not reach the merits of appellants' claims *or* did not dispose of all requests for injunctive relief." *Winterland Concessions Co. v. Trela*, 735 F.2d 257, 260–61 (7th Cir.1984) (emphasis added); *see also Brown v. Kerr–McGee*, 767 F.2d at 1238 (stating that the test in *Winterland Concessions* was the narrower, applying *Carson* less frequently, of two tests used in the Circuit courts). In contrast, in *Southbend Consumers Club, Inc. v. United Consumers Club, Inc.*, 742 F.2d 392 (1984), the Seventh Circuit held that *Carson* is more broadly applicable and that it applies whether or not the district court addressed the merits of the appellant's claim.

Without deciding which test is appropriate, the Court, finding that the *Carson* case applies here under both rules, finds that the September Order is not yet appealable. Under the narrowest rule, stated in *Winterland*, a party seeking to appeal an interlocutory order denying an injunction must prove "serious, perhaps irreparable consequences" in either of two circumstances: (1) when the district court does not reach the merits of the claim, or (2) when the district court, having reached the merits of the claim, does not dispose of all requests for injunctive relief. The latter case applies here. Plaintiff made two claims under which the Court could grant injunctive relief. The September Order disposed of only one of these claims. Because plaintiffs still have a viable claim for injunctive relief, the September Order would be appealable only if doing so would avoid serious or irreparable harm. Since plaintiff did not move for summary judgment, it is

---

4. Plaintiff's recently filed a first amended complaint adding additional counts.

apparent that plaintiff could have waited until trial to resolve this copyright dispute. If plaintiff had sought an appeal on the September Order, it would have been no better off, vis a vis the alleged ongoing infringement, than it is right now. Thus, the Court finds that an appeal could not prevent serious harm, even if such harm were currently occurring.

Accordingly, The Court finds that section 1292(a)(1) does not apply to this case. Therefore, the September Order was not appealable and thus not final. As a result, the motion to reconsider is governed by Rule 54(b). Service on the motion to reconsider was timely.

*B. The Merits of the Motion to Reconsider*

■ Pivot Point makes three arguments in its motion to reconsider. Each argument, however, turns on whether the previous district court properly applied the case of *Carol Barnhart, Inc. v. Economy Cover Corp.,* 773 F.2d 411 (2d Cir.1985). This Court agrees with plaintiff that summary judgment is not warranted. In the opinion of the Court, the *Carol Barnhart* decision requires a different result than that ordered in September. At a minimum, the September Order makes an inappropriate finding of fact.

The applicable legal rules for this issue is neither difficult to state nor in dispute. The Copyright law protects pictorial, graphic, and sculptural works. 17 U.S.C. § 102(a)(5). Utilitarian articles fall within the scope of section 102(a)(5) when, and only so much as:

> [S]uch design incorporates pictorial, graphic, or sculptured features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

17 U.S.C. § 101. The separability rule may be satisfied either physically or conceptually. H.R.Rep. No. 1476, 94th Cong., 2d Sess. 55 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5668 [hereinafter cited as *House Report* ].

Although easy to state, the separability rule is difficult to apply, particularly, as here, when the dispute is over conceptual separability. *See* Paul Goldstein, *Copyright* § 2.5.3(b) (1989).

The September Order found that the aesthetic elements of the Mara Sculpture were not conceptually separable from the functional or utilitarian aspects of the mannequin. The Court respectfully disagrees.

In *Mazer v. Stein,* 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954), the Supreme Court first held that artistic works incorporated into industrial products were entitled to copyright protection. There, the Supreme Court upheld the viability of a copyright of a Balinese Dancer statuette used to form a lamp base. Congress attempted to codify *Mazer* in the Copyright Act of 1976 by providing copyright protection to pictorial, graphic, and sculptured features of industrial articles when those features are physically or conceptually separable from the function of the article. *See* 17 U.S.C. § 101; *House Report* at 55, 1976 U.S.C.C.A.N. 5668.

In attempting to apply *Mazer* and its codification, the courts have been faced with the difficult task of satisfying two policy goals: (1) encouraging and rewarding artistic expression; and (2) encouraging competition in the production of industrial goods. Because copyrights provide something of a monopoly, these two goals often collide. The task is further made worse by the difficulty courts face in determining to what degree an aesthetic element of an industrial good must be detached from its function to be considered separate or separable.

Numerous attempts have been made to formulate a principled method of determining the issue of conceptual separability. *See, e.g. Carol Barnhart Inc. v. Economy Cover Corp.,* 773 F.2d 411, 419 (2d Cir.1985) (Newman, J., dissenting) (noting five possible tests for conceptual separability).[5] Professor

---

5. *See* Paul Goldstein, *Copyright* § 2.5.3.(b) at 107–108. Professor Goldstein summarizes the five tests as follows:

> First, an "article used primarily to serve its utilitarian function might be regarded as lacking 'conceptually separable' design elements even though those design elements rendered it usable secondarily solely as an artistic work." A second, related approach would "uphold the

copyright whenever the decorative or aesthetically pleasing aspect to the article can be said to be 'primary' and the utilitarian function can be said to be 'subsidiary.'" Third, "conceptual separability exists where there is any substantial likelihood that even if the article had no utilitarian use it would still be marketable to some significant segment of the community simply because of its aesthetic qualities."

Goldstein summarizes each of the tests in his definition of conceptually separable:

[A] pictorial, graphic, or sculptural feature incorporated in the design of a useful article is conceptually separable if it can stand on its own as a work of art traditionally conceived, and if the useful article in which it is embodied would be equally useful without it.

Goldstein, *supra*, § 2.5.3.(b) at 109.

The Court of Appeals for the Seventh Circuit has yet to state which of the possible tests for conceptual separability it endorses. With little guidance within this Circuit, the Court chooses to follow Professor Goldstein's definition as an acceptable summary of the law. In the opinion of the Court, Pivot Point's explanation of the function of the Mara sculpture satisfies both elements of the definition proposed by Professor Goldstein. First, the unadorned sculpture that was copyrighted by the United States Copyright Office could stand alone as a traditional work of art. Sculptures of the human body and head have long been a common medium of expression, depicting human beings in the ideal, abstract, and individually. The Mara sculpture is little different from this traditional art. Second, the Mara sculpture, when used as a hairstand, could perform its utilitarian function without any reliance on its aesthetic features. The mannequin's lifelike facial features add nothing to the head's hair displaying function. Conceivably, the mannequin could perform its primary function as a featureless plastic oval. Accordingly, if that is the Mara Sculpture's function, the Court should deny the motion for summary judgment.

This Court's decision contrasts with the September Order in two respects. First, this Court finds a genuine issue of material fact regarding the function of the Mara Sculpture; the September Order appears to make factual assumptions in favor of Charlene and Yau. Second, this Court reads the *Barnhart* decision narrowly; the September Order appears to read that decision broadly.

First, the parties disagree over the function of the Mara Sculpture. Defendants assert that the sculpture has two, essentially equal, functions: displaying hair and displaying facial ornamentation including makeup and jewelry. If such were the case, the form and function of the Mara facial features would tend to merge, making them less separable. Under those facts, the Court would have to find that the Mara Sculpture was not entitled to copyright protection. *See Brandir Intl., Inc. v. Cascade P. Lumber Co.,* 834 F.2d 1142 (2d Cir.1987) (denying copyright protection to a bicycle rack where form merged with function); *Carol Barnhart Inc. v. Economy Cover Corp.,* 773 F.2d 411 (2d Cir.1985) (denying copyright protection to mannequin torsos when the aesthetic features, life-size breasts and shoulders, were "inextricably intertwined with the utilitarian feature, the display of the clothes."). The plaintiffs claim that the Mara Sculpture is first and foremost a hairstand and that any function performed by the facial features is minimal, if not nonexistent. Under these facts, the Court would find that the sculpture was entitled to copyright protection. *See Kieselstein–Cord v. Accessories by Pearl, Inc.,* 632 F.2d 989 (2d Cir.1980) (upholding copyright on a belt buckle when the function of the buckle was not affected by its artistic form). At this point, in the opinion of this Court, there is a genuine issue of material fact as to the function of the Mara Sculpture. The September Order appeared to assume the facts as stated by Charlene and Yau. *See Pivot Point Intl., Inc. v. Charlene Products, Inc.,* No. 90–C–6933, Memorandum Opinion and Order at 4, 1992 WL 233982 (N.D.Ill. September 11, 1992) (stating that the Mara mannequin head functions as a medium to receive make-up, wigs, jewelry, and etc.).

Second, the *Barnhart* decision may be distinguished here. As stated above, in *Barnhart,* the Second Circuit denied a copyright for mannequin torsos. The torsos were

---

Fourth, some "might suggest that 'conceptual separability' exists whenever the design of a form has sufficient aesthetic appeal to be appreciated for its artistic qualities." As his own formulation, Newman proposed that for design features to be conceptually separable "the article must stimulate in the mind of the beholder a concept that is separate from the concept evoked by its utilitarian function."
*Id.* (summarizing and quoting *Carol Barnhart Inc. v. Economy Cover Corp.,* 773 F.2d 411, 419–23 (2d Cir.1985) (Newman, J. dissenting).

made with lifelike shoulders and breasts and contained hollowed out backs around which clothing could be pulled and fastened so as to display neatly articles of clothing. The Court reasoned that the aesthetic features of the torsos were "inextricably intertwined" with its utilitarian function. *Carol Barnhart Inc. v. Economy Cover Corp.,* 773 F.2d at 419. To serve their purpose at all, the torsos had to have some configuration of the shoulders and chest. *Id.* The September Order does not rely on *Barnhart* in concluding that the Mara Sculpture's aesthetic features are inseparable from its function. Indeed, the Order cites no cases in arriving at its conclusion. However, the conclusion reached seems to based on the assumption that all mannequins are solely utilitarian articles having no conceptually separable aesthetic features. If this assumption is based on the *Barnhart* case, it is erroneous. Nowhere does the *Barnhart* court state that all mannequin's are not entitled to copyright protection. In fact, footnote 5 of the opinion leaves open the possibility that the case might have been differently decided given changes in the mannequins depicted. *See Barnhart,* 773 F.2d at 419 n. 5 (stating that the facts of the case failed to satisfy even the standard proposed by dissenting judge because the backs of the torsos had been carved out, preventing them from being confused as sculptures). Unlike the *Barnhart* mannequins, the mannequin head here may have aesthetic features that are separable from its function.

There are genuine issues of material fact as to issue is the function of the Mara Sculpture and the existence of conceptual separability. More discovery may be necessary. Accordingly, summary judgment on Count I is inappropriate at this time and is hereby denied. The September Order is hereby vacated.