AKZO COATINGS, INC., et al., Plaintiffs

v.

**AINGER CORPORATION,**
et al., Defendants.

No. 3:91–CV–570RM.

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 25, 1995.

Timothy W. Woods, Jones Obenchain Ford Pankow and Lewis, South Bend, IN, Gary R. Letcher, Timothy L. Harker, Colleen M. Morgan, David Zachary Kaufman, The Harker Firm, Washington, DC, for plaintiffs Akzo Coatings, Inc., O'Brien Corp.

Pierre C. Talbert, Jr., Christopher W. Brownell, Deanna S. Brocker, Foley and Lardner, Chicago, IL, for defendants Aigner Corp., American Can Company, Duplicolor Products Co., Illinois Bronze Paint Co., Motorola, Inc., Prefinish Metals, Inc., S & C Elec. Co., Whittaker Corp.

Pierre C. Talbert, Jr., Foley and Lardner, Chicago, IL, for defendants Bee Coated Film Co., Dexter Corp.

Pierre C. Talbert, Jr., Christopher W. Brownell, Deanna S. Brocker, Foley and Lardner, Chicago, IL, Kenneth Anspach, John D. Dalton, Margaret Rosenberg Milsky, Anspach and Dalton, Chicago, IL, James E. McKinnon, Reynolds Metals Company, Richmond, VA, for defendant Graham Paint & Varnish Co., Inc.

James H. Milstone, Thorne Grodnik Ransel Duncan Byron and Hostetler, Elkhart, IN, Philip B. McKiernan, Hackman McClarnon Hulett and Cracraft, Indianapolis, IN, for defendant IVC Industrial Coatings, Inc.

Pierre C. Talbert, Jr., Christopher W. Brownell, Deanna S. Brocker, Foley and Lardner, Chicago, IL, James E. McKinnon, Reynolds Metals Co., Richmond, VA, for defendant Reynolds Metals Company.

Richard W. Paulen, Barnes and Thornburg, Elkhart, IN, Pierre C. Talbert, Jr., Christopher W. Brownell, Deanna S. Brocker, Foley and Lardner, Chicago, IL, for defendant Rollcoater.

Pierre C. Talbert, Jr., Christopher W. Brownell, Deanna S. Brocker, Foley and Lardner, Chicago, IL, Mark J. Steger, McBride Baker and Coles, Chicago, IL, for defendant Sherwin Williams Company.

Ronda P. Bayer, and Pierre C. Talbert, Jr., Christopher W. Brownell, Deanna S. Brocker, Foley and Lardner, Chicago, IL, for defendant Valspar, Inc.

David M. Brooks, L. Michael Koch, Matthew R. Clark, Clark Quinn Moses and Clark, Indianapolis, IN, for defendant Vista Products, Inc. (National Products Division).

Robert C. Mitchell, Morton International Inc., Chicago, IL, Christopher W. Brownell, Deanna S. Brocker, Foley and Lardner, Chicago, IL, Thomas T. Terp, Robert A. Bilott,

Taft Stettinius and Hollister, Cincinnati, OH, for defendant Bee Chemical Company.

Timothy J. Abeska, Jeanine M. Gozdecki, Roemer and Mintz, South Bend, IN, Donald B. Hilliker, John J. O'Shea, Pope and John Ltd., Chicago, IL, James R. Morrin, Leo P. Dombrowski, Wildman Harrold Allen and Dixon, Chicago, IL, for defendants CFC Intern., Inc., Coated Film Co.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause comes before the court on the RD/RA Settling Defendants' motion for clarification and motion for partial reconsideration of the court's October 1994 Memorandum and Order, reported at 881 F.Supp. 1202 (N.D.Ind.1994). Also before the court is the motion to strike paragraph 18 of the Settling Defendants' amended counterclaim filed by Akzo Coatings, Inc. and The O'Brien Corporation. For the following reasons, the court grants in part the Settling Defendants' motions for clarification and partial reconsideration of the October 1994 order, and denies Akzo and O'Brien's motion to strike paragraph 18 of the Settling Defendants' amended counterclaims.

The court presumes a familiarity with the facts of this case, the court's prior holdings, and the Seventh Circuit's decision reported at 30 F.3d 761 (7th Cir.1994). The October 1994 order addressed two summary judgment motions: (1) the Settling Defendants' motion for partial summary judgment on Count 1 of their counterclaim against Akzo and O'Brien as to the issue of liability; and (2) Akzo and O'Brien's cross-motion for summary judgment on the Settling Defendants' counterclaims. The court denied the Settling Defendants' partial summary judgment motion, which only addressed the Settling Defendants' claim to hold Akzo and O'Brien jointly and severally liable for all the response costs the Settling Defendants have incurred or may incur, pursuant to § 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a). Following the Seventh Circuit's lead in *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764

(7th Cir.1994), the court held that the Settling Defendants could only make a claim for contribution, pursuant to § 113(f) of CERCLA, against Akzo and O'Brien, and accordingly denied the Settling Defendants' motion for partial summary judgment as to Akzo and O'Brien's liability under § 107(a) for all costs. *Akzo Coatings, Inc. v. Aigner Corp.,* 881 F.Supp. 1202, 1209 (N.D.Ind.1994).

The court granted in part and denied in part Akzo and O'Brien's cross-motion for summary judgment on the Settling Defendants' counterclaims; this ruling produces the asserted confusion leading to these motions. The Settling Defendants seek a clarification and partial reconsideration of that order.

### I. Motion for Clarification

The Settling Defendants' motion for clarification requests the court to clarify that:

(1) the October Order does not constitute the entry of partial summary judgment in favor of Akzo Coatings, Inc., and The O'Brien Corporation (collectively, the Plaintiffs), but only the entry of an interlocutory order deeming certain facts established, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure; and

(2) the October Order does not adjudicate, or otherwise address, the RD/RA Settling Defendants' claims and/or the Plaintiffs' liability with respect to (a) areas of contamination within the Fisher–Calo Superfund Site (the "Site") which have not been earmarked for remediation and (b) non-remedial response costs.

The first item for which the Settling Defendants seek clarification (that the October Order did not constitute an entry of a partial final judgment in favor of Akzo and O'Brien, but rather was an interlocutory order deeming certain facts admitted) is easily addressed. Federal Rule of Civil Procedure 56(d) provides:

If on a motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court ... shall if practical ascertain what material facts exist without substantial controversy and what material facts are actually in good faith controverted. It

shall therefore make an order specifying the facts that appear without substantial controversy ... and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

The final sentence of Rule 56(c) states that "[a] summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." Since the court could not enter final judgment in Akzo and O'Brien's favor on portions of the Settling Defendants' counterclaims, the October 1994 Order was interlocutory in character, and the court's findings were intended to satisfy the requirements of Rule 56(d).

The second item for which the Settling Defendants seek clarification is not as easily resolved. The Settling Defendants ask the court to hold that the October 1994 Order did not "adjudicate, or otherwise address, the RD/RA Settling Defendants' claims and/or the Plaintiffs' liability with respect to (a) areas of contamination within the Fisher–Calo Superfund Site (the "Site") which have not been earmarked for remediation and (b) non-remedial response costs." The Settling Defendants contend that Akzo and O'Brien's cross-motion for summary judgment did not address areas within the Site not "earmarked for remediation," or "non-remedial response costs." The Settling Defendants seek clarification that the October 1994 Order did not foreclose these claims in any way.

Akzo and O'Brien argue that the Settling Defendants invented these claims only after losing on portions of Akzo and O'Brien's cross-motion for summary judgment. The Settling Defendants respond that these claims are not new, and always have been encompassed by their counterclaims. The Settling Defendants' concession that the claims are not new, and that they have always been asserted as part of their counterclaims, actually harms their argument for clarification of the October 1994 Order: if Akzo and O'Brien's cross-motion failed to address any of the Settling Defendants' claims, and the Settling Defendants intended for those claims to survive Akzo and

O'Brien's cross-motion, it was the Settling Defendants' obligation in responding to Akzo and O'Brien's cross-motion to protect those claims by demonstrating how Akzo and O'Brien's motion did not affect them. The Settling Defendants did not do this.

The court does not mean to suggest that the October 1994 Order fully addressed the Settling Defendants' claims with respect to areas within the Site not "earmarked for remediation" or with respect to "non-remedial response costs." The court did not address these claims (nor was it aware of them) in the Order at all. Rather, the court's interlocutory findings in the October 1994 Order, to the extent not changed below, merely foreclose the Settling Defendants' opportunity to assert those claims to the extent they are affected by those factual findings.

The court's treatment of this issue in this order should neither surprise nor disappoint the parties. As Akzo and O'Brien assert in their response, the October 1994 Order held that Akzo and O'Brien are "not liable for response costs associated with specific areas and specific harms." As the Settling Defendants correctly state, however, "the Court did *not* rule that the Plaintiffs are not liable for response costs associated with *all* areas and *all* harms at the Site."[1]

Therefore, the court grants in part and denies in part the Settling Defendants' motion for clarification. The court clarifies its October 1994 Order by stating that the order was interlocutory in character, deeming certain facts established pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. The court denies the motion to clarify in all other respects, in accordance with the foregoing discussion.

## II. Motion for Partial Reconsideration

The Settling Defendants also seek partial reconsideration of the October 1994 Order. They ask the court to reverse two rulings made in the October 1994 Order on Akzo and O'Brien's cross-motion for summary judgment: (1) that Akzo and O'Brien are not liable with respect to two areas contaminated with polychlorinated biphenyls ("PCBs"); and (2) that Akzo and O'Brien are not liable with respect to groundwater contamination underlying the National Products property. The thrust of the Settling Defendants' argument is that the court relied upon evidence and arguments "forwarded at the last minute" in Akzo and O'Brien's reply memorandum in support of its cross-motion.

The Settling Defendants bring their motion for reconsideration pursuant to Federal Rule of Civil Procedure 54, which provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

As stated above, the court did not fully adjudicate all of the parties' claims, rights and liabilities in this case in the October 1994 Order. Thus, the October 1994 Order is subject to reconsideration and revision pursuant to Rule 54(b).

"Whether to reconsider an interlocutory order is within the sound discretion of the district court." *Acme Printing Ink Co. v. Menard, Inc.*, 891 F.Supp. 1289, 1294 (E.D.Wis.1995); *see also Fisher v. National Railroad Passenger Corp.*, 152 F.R.D. 145, 149 (S.D.Ind.1993) ("It is well-established

---

1. As the Settling Defendants state: "That is no more and no less than what the Defendants are claiming in the Motion for Clarification. Simply stated, the Plaintiffs got what they asked for in the October Order, and the Defendants would like a clarification from the Court that that is *all* they got."

that a district court has the inherent power to reconsider interlocutory orders and re-open any part of a case before entry of final judgment."). Unlike motions to reconsider final judgments, which are governed by Federal Rules of Civil Procedure 59 or 60, a motion to reconsider an interlocutory order may be entertained and granted as justice requires. *Acme Printing Ink Co. v. Menard, Inc.*, 891 F.Supp. at 1295; *see also Pivot Point Int'l, Inc. v. Charlene Products, Inc.*, 816 F.Supp. 1286, 1287 (N.D.Ill.1993); *Continental Cas. Co. v. Great American Ins. Co.*, 732 F.Supp. 929, 931 (N.D.Ill.1990); Advisory Committee Notes to 1946 Amendment to Rule 60(b) ("Interlocutory judgments are not brought within the restrictions of [Rule 60(b) ], but rather they are left subject to the complete power of the court rendering them to afford such relief as justice requires.").

## A.

Before turning to the Settling Defendants' specific contentions, the court addresses the CERCLA scheme of liability as it applies to this case. The court previously held that the Settling Defendants may not assert a claim against Akzo and O'Brien under § 107(a) of CERCLA for complete cost recovery, but rather may only assert a claim against Akzo and O'Brien for contribution pursuant to § 113(f) of CERCLA. *Akzo Coatings, Inc. v. Aigner Corp.*, 881 F.Supp. at 1209. The Seventh Circuit stated that Akzo and O'Brien may not assert a claim against the Settling Defendants for complete cost recovery under § 107(a), but may only assert a contribution claim under § 113(f). *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d at 764. The court subsequently relied upon these decisions and decisions in other CERCLA cases in determining that a party who is liable in some measure for contamination at a site may not bring a cost recovery claim pursuant to § 107 of CERCLA against another potentially responsible party ("PRP") for joint and several liability; rather, such a party may only bring a claim for contribution. *See, e.g., United States v. Colorado & Eastern R.R. Co.*, 50 F.3d 1530, 1535 (10th Cir.1995) (PRPs are limited to asserting claims against other PRPs for contribution under § 113(f)); *United Technologies Corporation v. Browning–*

*Ferris Industries, Inc.*, 33 F.3d 96 (1st Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1176, 130 L.Ed.2d 1128 (1995) (PRP may only bring § 113(f) contribution actions against other PRPs); *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 672 (6th Cir.1989); *United States v. Bay Area Battery*, 895 F.Supp. 1524, 1533 (N.D.Fla.1995) (citing *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir.1994), and holding that PRPs may only bring § 113(f) contribution actions against other PRPs); *Reichhold Chems., Inc. v. Textron, Inc.*, 888 F.Supp. 1116, 1123–24 (N.D.Fla.1995) ("It necessarily follows that the exclusive remedy for a liable PRP seeking contribution from other PRPs is a Section 113(f) contribution claim."); *T H Agriculture & Nutrition Co., Inc. v. Aceto Chems. Co., Inc.*, 884 F.Supp. 357, 362 (E.D.Cal.1995) (stating that weight of authority supports finding that "an action by a CERCLA-liable party against other PRPs is for contribution," and is restricted to § 113(f)); *Kaufman & Broad–South Bay v. Unisys Corp.*, 868 F.Supp. 1212, 1216 (N.D.Cal.1994) ("While *Akzo [Coatings, Inc. v. Aigner Corp.,* 30 F.3d 761, 764 (7th Cir. 1994) ] demonstrates that an innocent private party is entitled to bring suit under § 9607(a), the reality is that the vast majority of private parties will be limited to suing for contribution under § 9613(f) ... [A] CERCLA plaintiff, other then the government, will rarely be 'innocent' and thus permitted to sue under § 9607(a)."); *Folino v. Hampden Color & Chem. Co.*, 832 F.Supp. 757, 764 (D.Vt.1993) ("This action, between two liable parties, appears to be appropriately treated as one for contribution.").

■ "Under the CERCLA statutory scheme, § 107 ... governs liability, while § 113(f) creates a mechanism for apportioning that liability among responsible parties." *Town of Munster, Indiana v. Sherwin–Williams Co., Inc.*, 27 F.3d 1268, 1270 (7th Cir.1994). Thus, although § 107 applies in this suit with respect to determining the liability of the parties, § 113(f) governs the actual apportionment of costs. Accordingly, a determination that a party is "liable" pursuant to § 107 does not mean that the liable party will be required to pay damages; rath-

er, damages are assessed through § 113(f) on an equitable basis. Thus, a "liable" party in a § 113(f) contribution action may be required to pay complete response costs, or may not be required to pay any response costs, or may be required to pay some intermediate amount, all depending on the court's equitable assessments under § 113(f).

■ Liability under § 107(a) of CERCLA is strict, *Harley–Davidson, Inc. v. Minstar, Inc.*, 41 F.3d 341, 343 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1401, 131 L.Ed.2d 289 (1995); a plaintiff need prove only four elements to establish liability:

(1) the site in question is a "facility" as defined in § 101(9);

(2) the defendant is a responsible person under § 107(a);

(3) a release or a threatened release of a hazardous substance has occurred; and

(4) the release or the threatened release has caused the plaintiff to incur response costs.

*Town of Munster, Indiana v. Sherwin–Williams Co., Inc.*, 27 F.3d at 1273; *see also Kerr–McGee Chemical v. Lefton Iron & Metal,* 14 F.3d 321, 325 (7th Cir.1994); *Environmental Transp. Systems, Inc. v. ENSCO, Inc.,* 969 F.2d 503, 506 (7th Cir.1992); *Dana Corporation v. American Standard, Inc.,* 866 F.Supp. 1481, 1493 (N.D.Ind.1994). "If a plaintiff establishes each of the four elements and the defendant is unable to establish one of the defenses listed in § 9607(b), the plaintiff is entitled to summary judgment on the liability issue." *Environmental Transportation Systems, Inc. v. ENSCO, Inc.,* 969 F.2d at 507.

**2.** Section 107(b) of CERCLA, 42 U.S.C. § 9607(b), states:

There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and damages resulting therefrom were caused solely by—

(1) an act of God;

(2) an act of war;

(3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship,

■ Thus, in suits between PRPs, § 107 provides the framework for a plaintiff to establish a defendant's liability under CERCLA, and § 113(f) establishes the framework for liable parties to litigate the issue of damages. *See, e.g., Town of Munster, Indiana v. Sherwin–Williams Co., Inc.,* 27 F.3d at 1270.

■ The party seeking contribution under § 113(f) bears the burden of establishing its entitlement to contribution. *See Akzo Coatings, Inc. v. Aigner Corp.,* 30 F.3d 761, 763 n. 2 (7th Cir.1994) ("[O]f course, it will be Akzo's burden to establish its entitlement to contribution from the defendants within the parameters of our opinion."). If a contribution defendant seeks to assert that it not liable at all under § 107(a), it may do so only by asserting and proving one of the affirmative defenses enumerated in § 107(b).[2] "[T]he clear and unambiguous language of § 107(a) imposes liability 'notwithstanding any other provision or rule of law, and subject *only* to the defenses set forth in subsection (b).'" *Town of Munster, Indiana v. Sherwin–Williams Co., Inc.,* 27 F.3d at 1271 (emphasis in original) (quoting 42 U.S.C. § 9607(a)).

■ Causation, while irrelevant when determining liability, can affect the ultimate determination of damages under § 113(f), which provides that "[i]n resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." This provision "clearly indicates Congress' intent to allow courts to determine what factors should be considered in their own discretion without requiring a court to consider any particular factors." *Environmental Transportation Systems, Inc. v. EN-*

existing directly or indirectly, with the defendant ..., if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration that characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or

(4) any combination of the foregoing paragraphs.

*SCO, Inc.*, 969 F.2d at 509. Thus, "the allocation of cleanup costs is a type of decision particularly suited to case-by-case determination." *Id.*

> Therefore, in any given case, a court may consider several factors, a few factors, or only one determining factor ... depending on the totality of circumstances presented to the court. Because allocation of cleanup costs can be based on many equitable factors on which there may be much competing evidence leading to material issues of fact, the issue of contribution may not always be suited to disposition by summary judgment.

*Id.* at 509–510. The court is not limited to any one or two factors in making its determination as to the propriety and extent of contribution. *Environmental Transportation Systems, Inc. v. ENSCO, Inc.*, 969 F.2d at 509; *see also Town of Munster, Indiana v. Sherwin–Williams Co., Inc.*, 27 F.3d at 1271 ("Although the only defenses to liability remain those set forth in Section 107(b), courts are to resolve such [contribution] claims on a case-by-case basis, taking into account relevant equitable considerations.").

■ The Seventh Circuit has provided guidance in determining whether and to what extent contribution is warranted under § 113(f):

> In allocating response costs among liable parties, a court should employ such equitable factors as it determines are appropriate. 42 U.S.C. § 9613(f)(1). Factors which may be considered include the relative fault of the parties, *Environmental Transportation Systems, Inc. v. ENSCO, Inc.*, 969 F.2d at 508–09 (a court has "power to weigh and consider relevant factors, including [relative] fault" of the parties);

relevant "Gore factors," [3] *id.* at 509 (noting that the "Gore factors are neither an exhaustive or exclusive list" of the factors to be considered); and any contracts between the parties bearing on the allocation of cleanup costs. *United States v. R.W. Meyer, Inc.*, 932 F.2d 568, 571–72 (6th Cir.1991).

*Kerr–McGee Chemical v. Lefton Iron & Metal,* 14 F.3d at 326.

Courts' interpretations and applications of CERCLA liability have changed several times since the Act's passage, and the Seventh Circuit's recent holdings in *Town of Munster, Indiana v. Sherwin–Williams Co., Inc.*, 27 F.3d 1268 (7th Cir.1994), and *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761 (7th Cir.1994), have altered this court's application of CERCLA in fundamental ways. As discussed, the Seventh Circuit in *Akzo Coatings* clearly stated that PRPs could only sue other PRPs under § 113(f) for contribution, and could not bring claims for complete cost recovery under § 107; several courts have concurred in this interpretation of the statute. Further, the Seventh Circuit stated in *Town of Munster* that if a defendant to a contribution claim seeks to assert that it not liable at all under § 107(a), it may do so only by asserting one of the affirmative defenses enumerated in § 107(b), which it will bear the burden of proving. "[T]he clear and unambiguous language of § 107(a) imposes liability 'notwithstanding any other provision or rule of law, and subject *only* to the defenses set forth in subsection (b).'" *Town of Munster, Indiana v. Sherwin–Williams Co., Inc.*, 27 F.3d at 1271 (emphasis in original) (quoting 42 U.S.C. § 9607(a)); *see also Environmental Transportation Systems, Inc. v. ENSCO, Inc.*, 969 F.2d at 507 ("If a plaintiff

---

**3.** The "Gore factors," so-named because they were included in the unsuccessful 1980 House Superfund Bill sponsored by then-Congressman Albert Gore, include:

> (1) the ability of the parties to demonstrate that their contribution to a discharge, release or disposal of a hazardous waste can be distinguished;
> (2) the amount of hazardous waste involved;
> (3) the degree of toxicity of the hazardous waste involved;

> (4) the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste;
> (5) the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste; and
> (6) the degree of cooperation by the parties with Federal, State, or local officials to prevent any harm to the public health or the environment.

*Environmental Transportation Systems, Inc. v. ENSCO, Inc.*, 969 F.2d at 508.

establishes each of the four elements and the defendant is unable to establish one of the defenses listed in § 9607(b), the plaintiff is entitled to summary judgment on the liability issue."). Thus, the Seventh Circuit has foreclosed the use of defenses to liability other than those specifically enumerated by § 107(b).

*Town of Munster* casts doubt on at least a portion of the court's October 1994 Order. The briefs submitted to the court by Akzo and O'Brien and the Settling Defendants on the summary judgment motions agreed that although CERCLA does not mandate joint and several liability, courts impose such liability unless a defendant can prove that the harm is divisible. The court adopted this view of CERCLA liability in its October 1994 Order:

> Applying common law rules, courts have held that if two or more persons act independently to cause a single harm for which there is a reasonable basis for apportionment according to each person's contribution, then each person is held liable under CERCLA for only that portion of the harm he caused. Courts have applied the principles enunciated in the *Restatement (Second) of Torts* in determining whether the costs of remediating environmental harm at a site should be apportioned.
>
> \*   \*   \*   \*   \*   \*
>
> If Akzo and O'Brien can establish that the harm at the Site is capable of reasonable apportionment, then they should be held liable only for the response costs related to that portion of harm to which they contributed. Akzo and O'Brien bear the burden of proving that the harm is capable of apportionment. Moreover, if Akzo and O'Brien can establish that they have not caused or contributed to the release of hazardous substances at the Site, or the resultant response costs, they should not be held liable for any of the response costs.

*Akzo Coatings, Inc. v. Aigner Corp.*, 881 F.Supp. 1202, 1209–1210 (N.D.Ind.1994) (citations omitted).

The court erred in analyzing Akzo and O'Brien's motion under a theory that Akzo and O'Brien would not be liable if they could prove that the harm was capable of reasonable apportionment. Although this appeared to be the rule at the time of decision, the Seventh Circuit foreclosed the use of such an affirmative defense to liability in *Town of Munster*, 27 F.3d at 1271 ("[T]he clear and unambiguous language of § 107(a) imposes liability 'notwithstanding any other provision or rule of law, and subject *only* to the defenses set forth in subsection (b).' "). "Subsection (b) then establishes 'the universe of defenses to section 107 liability.' " *Id.* (*quoting General Electric Co. v. Litton Indus. Automation Sys., Inc.*, 920 F.2d 1415, 1418 (8th Cir.1990)).

Although the Seventh Circuit limited its holding in *Town of Munster* to "the simple proposition that CERCLA does not permit *equitable* defenses to § 107 liability," *Town of Munster*, 27 F.3d at 1271–1272 (emphasis in original), this limitation appears directed towards the defendant's "parade of horribles" that the holding would bar the protection of statutes of limitations, accord and satisfaction, res judicata, and indemnity and hold harmless agreements. *Id.* Moreover, when the purpose behind allowing the affirmative defense of divisibility of harm in CERCLA actions is revealed, its inapplicability to this action is even more apparent. The Tenth Circuit recently discussed the history behind the divisibility defense, and its relationship to § 113(f) of CERCLA:

> The original CERCLA legislation created the cost recovery mechanism under § 107. This provision makes enumerated parties, PRPs, "liable for … all costs of removal or remedial action incurred by [government entities]; [and] any other necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4).
>
> Although the broad language of CERCLA has given the courts many challenges, it is now well settled that § 107 imposes strict liability on PRPs for costs associated with hazardous waste cleanup and site remediation. It is also well settled that § 107 imposes joint and several liability on PRPs regardless of fault.

Due to the impossibility of determining the amount of environmental harm caused by each party where wastes of varying and unknown degrees of toxicity and migratory potential have mixed, the courts have been reluctant to apportion costs between PRPs, and hence have adopted the rule that "damages should be apportioned only if the *defendant* can demonstrate that the harm is divisible."

Where defendants bear the burden of proving divisibility, responsible parties rarely escape joint and several liability. Therefore, CERCLA, as originally enacted, left a PRP faced with the prospect of being singled out as the defendant in a cost recovery action without any apparent means of fairly apportioning CERCLA costs awarded against it to other PRPs. The courts responded to this inequity by recognizing an implicit federal right to contribution where PRPs have been subject to joint and several liability and have incurred response costs in excess of their pro rata share.

With the enactment of SARA in 1986, Congress codified this implied right of contribution by amending CERCLA § 113 to expressly recognize a right of contribution. *United States v. Colorado & Eastern R.R. Co.,* 50 F.3d 1530, 1535 (10th Cir.1995) (citations omitted) (emphasis in original).

Thus, application of the divisibility defense is sensible in a cost recovery suit brought by the government, because the defendant could be held jointly and severally liable for all of the government's response costs under § 107(a) of CERCLA. None of the cases on which the court relied in adopting the divisibility defense in the October 1994 Order were actions between PRPs; all were actions brought by the government. *Akzo Coatings, Inc. v. Aigner Corp.,* 881 F.Supp. at 1210.

But application of the defense in a suit between PRPs does not make sense, since the parties, if "liable," are responsible only for the damages they actually caused. Indeed, the result of applying the divisibility defense in a suit for contribution between PRPs is to shift the burden of proof. If the divisibility defense is applied, as it was in the court's October 1994 Order, Akzo and

O'Brien would "bear the burden of proving that the harm is capable of apportionment." *Akzo Coatings, Inc. v. Aigner Corp.,* 881 F.Supp. at 1209. If, on the other hand, the divisibility defense did not apply, and assuming that Akzo and O'Brien are proven to be "liable" under § 107(a) pursuant to the four-part test laid out in *Town of Munster, Indiana v. Sherwin–Williams Co., Inc.,* 27 F.3d at 1273, the Settling Defendants, as the parties seeking contribution, would bear the burden of establishing its entitlement to contribution from Akzo and O'Brien. *See Akzo Coatings, Inc. v. Aigner Corp.,* 30 F.3d at 763 n. 2 ("[O]f course, it will be [the party seeking contribution]'s burden to establish its entitlement to contribution from the defendants within the parameters of our opinion.").

Thus, though neither party objected at the time, and although neither party has raised the issue presently, the court finds that it erred by applying the divisibility defense to the Settling Defendants' claims against Akzo and O'Brien. This cause shall henceforth be governed by the rules of law discussed above.

### B.

The ramifications of this holding, in light of the October 1994 Order and the current motion to reconsider, are not immediately apparent. Akzo and O'Brien's cross-motion was premised on the theory that Akzo and O'Brien were not actually liable, but the motion was founded upon the divisibility defense and not upon a showing that the Settling Defendants could not satisfy the four-part test for liability under *Town of Munster,* 27 F.3d at 1273. Nevertheless, it would appear that the arguments and evidence Akzo and O'Brien' submitted to show that they are not liable under the divisibility defense also would go to show whether the Settling Defendants' claim for contribution would fail with respect to certain harms. Further, although the court addressed Akzo and O'Brien's cross-motion for summary judgment under the view that Akzo and O'Brien bore the burden of proving divisibility of harm, rather than under the view that the Settling Defendants bore the burden of proving its entitlement to contribution, this error does not necessarily render the court's find-

ings in favor of Akzo and O'Brien moot. Indeed, since the court found that no genuine issues of material fact existed precluding summary judgment as to whether Akzo and O'Brien did not cause at least some of the harms at the Site, placement of the burden of proof on Akzo and O'Brien rather than the Settling Defendants did not affect those conclusions.

This is not to suggest that those conclusions are invincible, for as stated previously, the court may reconsider any of its findings before the entry of final judgment. With this, the court reaches the Settling Defendants' motion for partial reconsideration. Arguing in part that the court was misled by arguments and evidence first advanced in Akzo and O'Brien's reply brief, the Settling Defendants ask the Court to reverse two rulings made in the October 1994 Order on Akzo and O'Brien's cross-motion for summary judgment: (1) that Akzo and O'Brien are not liable with respect to two areas contaminated with polychlorinated biphenyls ("PCBs"); and (2) that Akzo and O'Brien are not liable with respect to groundwater contamination underlying the National Products property.

1.

The October 1994 Order held that since Akzo and O'Brien's wastes did not contain PCBs, Akzo and O'Brien could not be liable for any harm caused solely by PCBs, so that Akzo and O'Brien were not liable for a 500 cubic yard pocket of soil contaminated by PCBs at the Two-Line Road Facility, *Akzo Coatings, Inc. v. Aigner Corp.*, 881 F.Supp. at 1215, or for a 500 cubic yard pocket of soil contaminated with PCBs at the New Plant Life Facility, *id.* at 1217. The Settling Defendants now contend that the court's conclusion that these two areas contain only PCBs was based solely on incomplete and misleading evidence submitted by Akzo and O'Brien in their reply brief, and that they were thus not afforded an opportunity to respond to such evidence.

■ The Settling Defendants' objection to the evidence first submitted by Akzo and O'Brien in their reply brief is well-taken. Although the Settling Defendants could have, and perhaps should have, filed a motion for

leave to respond to this new evidence while the cross-motion was still pending, the court is unwilling to hold that the Settling Defendants' failure to do so now precludes its opportunity to raise such objections in a motion to reconsider brought under Rule 54(b). Supplementary evidence submitted in Akzo and O'Brien's reply persuaded the court that the soil pocket at the Two–Line Road facility contains only PCB contamination. *See Akzo Coatings, Inc. v. Aigner Corp.*, 881 F.Supp. at 1215 (relying on plaintiffs' reply appendix).

■ The Settling Defendants have attached as exhibits to their motion for partial reconsideration two maps contained in the United States Environmental Protection Agency's ("USEPA") Remedial Investigation Report ("RI Report") that suggest that the soil pocket containing PCBs at the Two–Line Road facility is subsumed by an area containing volatile organic compounds ("VOCs"). The Settling Defendants contend that this evidence alone creates a genuine issue of material fact as to whether the soil pocket contained only PCBs. Akzo and O'Brien disagree, offering further evidence to suggest that the soil pocket was tested for VOCs and none were found. The parties' evidentiary submissions muddle whether the soil pocket at the Two–Line Road facility actually contained hazardous substances other than PCBs, but the Settling Defendants' submission in their motion for partial reconsideration creates a genuine issue as to whether the soil pocket at the Two–Line Road facility contained VOCs. Thus, the court reverses its October 1994 Order with respect to the soil pocket at the Two–Line Road facility to the extent that the Settling Defendants may, if they so desire, attempt to prove at trial that the soil pocket contained VOCs in addition to PCBs in an attempt to establish its entitlement to contribution. The Settling Defendants may not, however, challenge the court's finding that Akzo and O'Brien's wastes did not contain PCBs, and that they are not responsible for PCB contamination.

The October 1994 Order does not specifically state whether the court relied upon Akzo and O'Brien's supplementary evidence in concluding that the soil pocket at the New

Plant Life facility contained only PCBs. The Settling Defendants now contend that data from the USEPA's RI Report indicates that xylenes, carbon disulfide, and 1,1,1–trichloroethane all were detected at a surface soil location within the PCB area at the New Plant Life facility. Although it is unclear whether Akzo and O'Brien's supplementary evidence prejudiced the Settling Defendants with respect to the soil pocket at the New Plant Life facility, Akzo and O'Brien admit in their response to the motion for reconsideration that "[a]n inconsequential quantity of VOCs was found" at the New Plant Life PCB area, bringing into serious question the court's holding that the New Plant Life soil pocket contained only PCBs. Given Akzo and O'Brien's admission that the area might contain at least an "inconsequential quantity" of VOC, the court reverses its October 1994 Order with respect to the soil pocket at the New Plant Life facility to the extent that the Settling Defendants may, if they so desire, attempt to prove at trial that the soil pocket contained VOCs in addition to PCBs in an attempt to establish its entitlement to contribution. As with the Two–Line Road facility, however, the Settling Defendants may not challenge the court's finding that Akzo and O'Brien's wastes did not contain PCBs, and that they are not responsible for PCB contamination.

2.

■ The Settling Defendants also ask the court to reverse its finding that Akzo and O'Brien are not liable with respect to groundwater contamination underlying the National Products property. With respect to this area, the court held that based on the evidence before it, "[t]he only reasonable inference that can be drawn is that the discharge by National Products [of approximately 5,000 gallons of waste water containing VOCs in 1987] caused the groundwater contamination at the National Products facility." *Akzo Coatings, Inc. v. Aigner Corp.*, 881 F.Supp. at 1218. The court predicated this holding partially on a finding that "[t]he VOCs in the National Products' discharges are similar to the compounds now found in the groundwater." *Id.*

The Settling Defendants contend that the evidence before the court when it made this determination could not have supported its finding that the VOCs in National Products' discharges are similar to the compounds found in the groundwater. According to Figure 4.5–2 of the USEPA's RI Report (upon which the court relied), the groundwater at the National Products Facility is contaminated with trichloroethene ("TCE"), 1,1,1–trichloroethane ("1,1,1–TCA"), and 1,1–dichloroethane ("1,1–DCA"). In contrast, other evidence submitted by Akzo and O'Brien in support of their cross-motion for summary judgment indicates that National Products' waste water consisted of acetone, toluene, ethyl benzene, xylenes, bromoform, chlorobenzene, styrene, tetrachlorethane, tetrahydrofuran, 1,1,2–trichloroethane, and TCE. Of these substances, the evidence suggests that only TCE was ever found to be present in the groundwater. Further, Akzo and O'Brien's evidence also demonstrated that National Products' waste water had been specifically tested for 1,1,1–TCA and 1,2–DCA, but neither was detected. Thus, the Settling Defendants contend, even Akzo and O'Brien's own evidence submitted on summary judgment demonstrated that genuine issues of material fact exist as to whether Nation Products' discharges of waste water was the sole cause of VOC contamination in the groundwater at the National Products Facility.

■ The court agrees with the Settling Defendants' view of the evidence; Akzo and O'Brien's evidence creates a genuine issue of material fact as to the cause of the VOC contamination at the National Products Facility. In contrast to the evidence regarding the pockets of PCB contamination, however, the Settling Defendants do not contend that this evidence was withheld until Akzo and O'Brien's reply brief; the evidence was submitted with Akzo and O'Brien's cross-motion. The Settling Defendants do not now explain what precluded them from pointing out these inconsistencies in the evidence when responding to Akzo and O'Brien's cross-motion.

■ The Settling Defendants' belated statement of genuine issues stated that "[t]he VOCs in the 1987 discharge at the National

Packaging premises [a.k.a. National Products] are not identical to the compounds present in the groundwater at the National premises," but the Settling Defendants' statement of genuine issues did not contain the "appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence" required by District Rule 56.1. It is not the district court's task "to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Richards v. Combined Ins. Co. of America*, 55 F.3d 247, 251 (7th Cir.1995).

Were the court addressing this issue on a motion to reconsider a final judgment under Rules 59(e) or 60(b) (or if it were reviewing a final judgment on appeal), it would not reconsider its finding as to the origin of the VOCs contaminating the National Products groundwater because the Settling Defendants did not raise a genuine issue as to this matter in response to Akzo and O'Brien's cross-motion. The court, however, is reviewing an interlocutory order under Rule 54(b), which allows the court to reconsider its prior order "as justice requires." *Acme Printing Ink Co. v. Menard, Inc.*, 891 F.Supp. at 1295. Further, the evidence that creates a genuine issue as to the origin of the VOCs contaminating the National Products facility was presented to the court by Akzo and O'Brien, and thus was before the court when the October 1994 Order was issued. Finally, given the status of this case, which has not yet been set for trial, and in light of the court's holding above that the divisibility defense is inapplicable to this action and that the Settling Defendants will bear the burden of establishing their entitlement to contribution, the benefit of reversing its prior holding outweighs what minimal prejudice could be caused by a reversal.

Accordingly, in the interest of justice, the court reverses its October 1994 Order to the extent it held that the only reasonable inference that can be drawn from the evidence is that the discharge by National Products caused the groundwater contamination at the National Products facility. The Settling Defendants will not be precluded at trial from attempting to prove that contribution from Akzo and O'Brien is warranted as a result of the groundwater contamination at the National Products facility.

### III. Motion to Strike Paragraph 18 of the Settling Defendants' Amended Counterclaim

■ Akzo and O'Brien have filed a motion to strike paragraph 18 of the Settling Defendants' amended counterclaim. They take issue with paragraph 18 because they contend it is indicative of the Settling Defendants' attempt to relitigate the cross-motion for summary judgment, and because it serves to confuse the issues.

The Settling Defendants respond that paragraph 18, along with paragraph 17, of the amended counterclaim were intended to clarify, but not materially change, the allegations made against the Plaintiffs in the Defendants' original Counterclaim. One of the Amended Counterclaim's central purposes is to remove any doubt (which, the Defendants contend, never should have existed) that the Defendants' claims against the Plaintiffs include claims associated with (a) areas of hazardous substance contamination at the Site which have not been earmarked for remediation and (b) Non–Remedial Costs.

■ The Settling Defendants correctly argue that motions to strike are not favored motions, and should be granted with caution. *See, e.g., United States v. Martell*, 844 F.Supp. 454, 456 (N.D.Ind.1994). In light of this and in light of the other decisions made by the court in this memorandum and order, and without passing on the merits of paragraph 18 or the claims stated therein, the court denies Akzo and O'Brien's motion to strike.

### IV. Conclusion

The court is fully cognizant of the import of this memorandum and order. This case has had a long, arduous history in this court, consisting of several dispositive motions, voluminous pleadings and evidentiary submissions, and even an interlocutory appeal. Nevertheless, given that no final judgments have been entered in this cause and that the cause remains to be set for trial, the court

believes that this memorandum and order, and the court's findings stated herein, are warranted. The court appreciates that its explanation of its perception of the CERCLA liability scheme in this order, to an extent, drastically differs from the perception under which the parties—and the court—were previously operating. Despite the changes this may require in the parties' litigation strategy, the court believes that today's expression of how CERCLA applies to this case is necessitated by current Seventh Circuit precedent, and will likely help avoid future litigation caused by a subsequent reversal by the Seventh Circuit on the basis of an erroneous application of rules of law. The parties would be poorly served by maintaining earlier rulings based on what now can be seen as misunderstandings of evolving principles.

With respect to the court's reversal of its specific holdings regarding Akzo and O'Brien's cross-motion for summary judgment, the court believes that such relief is warranted in light of the status of this cause. Given that none of the issues in this cause have been fully litigated or finally determined, and given the court's reassessment of the applicable rules of law, the interests of justice support the court's decision to reopen the proofs as to the issues discussed above.

Accordingly, for the reasons stated above, the court:

(1) GRANTS IN PART the RD/RA Settling Defendants' motion for clarification of the court's October 1994 memorandum and order (filed June 15, 1995 (# 241)) as follows: the court clarifies its October 1994 Order by stating that the order was interlocutory in character, deeming certain facts established pursuant to Rule 56(d) of the Federal Rules of Civil Procedure; the court denies the motion to clarify in all other respects, as explained in this memorandum and order;

(2) GRANTS IN PART the RD/RA Settling Defendants' motion for partial reconsideration of the court's October 1994 memorandum and order (filed June 15, 1995 (# 240)) as follows:

(a) the court reverses its October 1994 Order with respect to the soil pocket at the Two–Line Road Facility to the extent that the Settling Defendants may, if they so desire, attempt to prove at trial that the soil pocket contained VOCs in addition to PCBs in an attempt to establish its entitlement to contribution. The Settling Defendants may not challenge the court's finding that Akzo and O'Brien's wastes did not contain PCBs, and that they are not responsible for PCB contamination;

(b) the court reverses its October 1994 Order with respect to the soil pocket at the New Plant Life Facility to the extent that the Settling Defendants may, if they so desire, attempt to prove at trial that the soil pocket contained VOCs in addition to PCBs in an attempt to establish its entitlement to contribution. The Settling Defendants may not challenge the court's finding that Akzo and O'Brien's wastes did not contain PCBs, and that they are not responsible for PCB contamination;

(c) the court reverses its October 1994 Order to the extent it held that the only reasonable inference that can be drawn from the evidence is that the discharge by National Products caused the groundwater contamination at the National Products facility. The Settling Defendants will not be precluded at trial from attempting to prove that contribution from Akzo and O'Brien is warranted as a result of the groundwater contamination at the National Products facility; and

(3) DENIES Akzo and O'Brien' motion to strike paragraph 18 of the Settling Defendants' amended counterclaim (filed August 11, 1995 (# 254)); and

(4) ORDERS that this cause be governed by the rules of law set forth and explained in Section II.A. of this memorandum and order.

SO ORDERED.